# Welch v. Porter & Co.

*Ejectment.*

63 225
94 246

1. *Statutory lien of contractors, mechanics, and material-men.*—The lien given by statute to contractors, mechanics, and material-men, for labor done and materials furnished in the construction of buildings, &c. (Code, §§ 3440-44), attaches from the commencement of the building, but is inchoate until the claim is filed in the office of the judge of probate; and if the claim is not so filed within the time prescribed by the statute, the lien is lost.

2. *Same.*—When a contractor undertakes to do the work on a building, or to furnish the materials and do the work, he acquires a lien under the statute, to the extent of his contract, from the commencement of the work; and when one person contracts to do the work, and another contracts to furnish the materials, the lien of each attaches when he begins the performance of his contract. But, when a contractor undertakes only to do the work, and the materials are to be furnished by the owner of the property, and after the commencement of the work materials are furnished by a third person, under a separate and independent contract with the owner, the lien of the material-man does not relate back to the commencement of the building, so as to override the lien of a mortgage or other intervening incumbrance.

APPEAL from the Circuit Court of Mobile.
Tried before the Hon. H. T. TOULMIN.

This action was brought by Ira W. Porter & Co., the appellees, to recover a lot in the city of Mobile, particularly

(15)

described in the complaint; and was commenced on the 1st February, 1879. The summons and complaint were served on W. L. Eggleston, tenant in possession; and John Welch was admitted to defend as landlord. The lot in controversy had belonged to Charles S. Bickford, and both parties to the suit claimed title under him; the plaintiffs, under a statutory lien for materials furnished by them to aid in the construction of a house on the lot, a judgment enforcing the lien, and a sheriff's deed to themselves as the purchasers at a sale under execution on that judgment; and the defendant, under two mortgages executed to him by said Bickford, which were foreclosed under a power of sale therein contained, and a deed to him by the nominal purchaser at the mortgage sale.

It appeared from the evidence adduced on the trial, as set out in the bill of exceptions, that some time prior to October, 1876, Bickford made a contract with one Smith, a builder, for the erection of a house on the lot, and agreed to furnish all the materials, while Smith was to do the work; that Smith commenced work under this contract, in October, 1876, "and did a considerable amount of work on the house, including framing, roofing, weather-boarding, and most of the outside work; that he quit work in January, 1877, before the completion of the house, because Bickford was slow pay; and that he returned in May, 1877, after satisfactory arrangements about pay had been made with Bickford, and did the finishing work." The plaintiffs were hardware merchants in Mobile, and one of them testified, in their behalf, "that in April, 1877, Bickford came to their store, and said that he desired to get some articles to finish his house, then in process of construction, and desired more than thirty days' time, which was the time usually given in the trade; that witness agreed to furnish such articles, as they might be needed, and to give said Bickford sixty days on his purchase of said materials;" and that the articles were furnished, under this agreement, at the dates shown in the account which was exhibited, between April 3d and July 6th. For the articles so furnished, including some other similar articles "furnished in the usual course of trade" in January, 1877, plaintiffs filed their claim against Bickford, with the judge of probate of Mobile county, on the 24th October, 1877. On the 12th January, 1878, they commenced their action against Bickford, to enforce this claim; and on the 16th May, 1878, obtained a judgment for $252.82, with a special direction for the levy of execution on the property specified. Under an execution issued on this judgment, the sheriff sold the property on the first Monday in September, 1878, and the plaintiffs became the purchasers; the sheriff's deed to them being

dated the 6th September, 1878. This was the title shown by the plaintiffs.

The defendant offered in evidence a mortgage executed to him by said Charles S. Bickford and wife, dated the 27th February, 1877, which conveyed the lot in controversy, and purported to be given to secure the payment of $810, due by several promissory notes of even date with the mortgage, and maturing at three, six, nine, twelve, and fifteen months after date; which mortgage was duly acknowledged and recorded on the day of its date. "The defendant introduced in evidence, also, a second mortgage on the same premises, and between the same parties, which was given to secure the sum of $400, and which was duly executed, acknowledged and recorded in May, 1877. It was admitted that said Bickford failed to pay said mortgage debts; and that the first mortgage was regularly foreclosed, under the power of sale therein contained; and that a deed of said property was made by the mortgagor, on the 21st May, 1878. to John Elliott, who, on the following day, conveyed back to the defendant; and that the said defendant was thereupon let into the possession of the said premises by the said Bickford, and has ever since continued in possession of the same by himself and his tenants." This was the defendant's title.

On the trial, the plaintiffs first offered in evidence the proceedings in the suit for the enforcement of their lien, the execution on their judgment, and the sheriff's deed to themselves; and they here closed. The defendant then offered in evidence his mortgages and deed, as above stated; and the plaintiffs, in rebuttal, then offered the testimony showing when and how their claim or lien originated. Numerous exceptions were reserved by the defendant to the rulings of the court on questions of evidence, but the decision of this court renders it unnecessary to notice them.

"The court charged the jury, among other things, as follows: 'If the jury find, from the evidence, that the plaintiffs furnished materials for the building on the lot in controversy, under a contract with the owner (Bickford) made in April, 1877; and that a just and true account of their demand for the same was filed in the office of the probate judge, within four months after the indebtedness on such demand accrued; and that they brought suit on such demand, within ninety days thereafter, and prosecuted the same to judgment; and that the building, for which such materials were furnished, was commenced in October, 1876; and that the property described in said judgment was sold by the sheriff, under an execution issued on said judgment, and bought by the plaintiffs; and that it is the same property described in the sher-

[Welch v. Portor & Co.]

iff's deed to the plaintiffs, and described in their complaint in this case,—then the plaintiffs are entitled to recover."

The defendant excepted to this charge, and he now assigns it as error, together with the other rulings of the court to which he reserved exceptions.

G. B. CLARK & F. B. CLARK, Jr., for appellant.—In eject- ment, only legal titles can be considered. The defendant in this case was not only in possession, but he showed a per- fect legal title in himself; that is, a mortgage from Bickford, through whom also the plaintiffs claim, a sale under the mortgage, and a conveyance from the purchaser at that sale. Against this perfect legal title, the plaintiffs set up a mechanics' lien, which is neither a title, nor evidence of title; neither a *jus ad rem*, nor a *jus in re;* but only a statutory right, to be enforced by a proceeding *in rem* in strict com- pliance with the terms of the statute. The sheriff's deed to plaintiffs, founded on their judgment against Bickford, was subsequent to the accrual of defendant's title; and there was no proof (nor could there be) that Bickford was in pos- session at the time of the levy and sale, or that he had any interest subject to be sold. As between the plaintiffs' deed from the sheriff and the defendant's title under the mortgage, the prior right and title were clearly with the defendant; and therefore the plaintiffs sought to supplement their title under the deed, by proof of their claim against Bickford, and of the proceedings to enforce it. As against the defend- ant to this suit, who was no party to that proceeding, the proceeding was *res inter alios acta.* By the express words of the statute giving the mechanics' lien, persons interested in the property, if not made parties, "shall not be bound by any such proceedings." Bickford was the only defendant to the proceeding, and he had no interest in defending it, since the property was already heavily, mortgaged. There is no question as to the validity of the defendant's mortgages; nor is any negligence, or want of good faith, imputed to him. He advanced his money on the faith of an unincumbered title, and his inquiries could only have discovered the facts actually existing—that is, that the erection of a house on the premises had been commenced, but the workman had aban- doned the contract. With this contract the plaintiffs have no connection, and they can not set it up, in aid of their sub- sequent contract, to defeat the intervening rights of the defendant. The statute can not be wrested from its pur- pose, to effect such injustice.

THOS. H. PRICE, *contra.*—The "mechanics' lien law" is

but a mode of securing the payment of a debt. Though the law is new in Alabama, it is by no means a novelty in other States. In its construction, it is proper to look to the judicial interpretation which similar laws have received · elsewhere, in connection with the avowed object and purpose of the law itself, which is protection to the mechanic and material-man. This purpose can only be adequately effected by making his lien relate to the commencement of the work; and this is no injustice to the public, since the work itself is notice to all the world.—Phillips on Mechanics' Liens, §§ 215-19. This was clearly the intention of the legislature, and it is declared in unequivocal language: "The lien for the work or things aforesaid shall attach, and be preferred to all other incumbrances which may be attached to or upon such buildings, erections, or other improvements, or the ground, or either of them, *subsequent to the commencement* of such buildings," &c.—Code, § 3442. The lien, however, is necessarily inchoate and imperfect, until recorded and established by a judicial proceeding; and the subsequent sections of the law make provision for this proceeding. The terms of the law are positive and unequivocal; the legislative power to pass such enactments is undoubted; and the construction contended for is supported by numerous judicial decisions. *Amer. Fire Ins. Co. v. Pringle*, 2 Serg. & R. 138; *Schaeffer v. Lobman*, 34 Mo. 68, and authorities cited by Phillips, *supra.* Neither interruptions in the work after its commencement, nor changes in the plan, so that the original character of the building is not entirely changed, affect the lien, or give a new commencement.—*Pennock v. Hoover*, 5 Rawle, 291; *Gordon v. Torrey*, 2 McCarter's Ch. N. J. 112. Of course, the defendant was not concluded by the plaintiffs' judgment, to which he was not a party; nor was it claimed to be conclusive on him. On the contrary, he was allowed every opportunity to attack it, and attempted to impeach it.

STONE, J.—The present case arises under the act "To establish and regulate liens of mechanics and other persons," approved March 6, 1876.—Pamph. Acts, 165; Code of 1876, §§ 3440 to 3461, inclusive. Section 3442 declares, that the lien conferred by the statute "shall attach, and be preferred to all other incumbrances which may be attached to or upon such buildings, erections, or other improvements, or the ground, or either of them, subsequent to the commencement of such buildings or improvements." Section 3444 prescribes the time and manner in which such claim of lien shall be preferred—namely, by filing with the judge of probate "a just and true account of the demand due him, after

all just credits have been given, which is [claimed] to be a lien upon such building or other improvements, or upon the unpaid balance in the owner's or proprietor's hands, and a true description of the property, or so near as to identify the same, upon which the lien is intended to apply; . . . . which statement shall, in all cases, be verified by the oath of the claimant, or some other person having knowledge of the facts." The time limited for thus filing the claim with the judge of probate is six months after the indebtedness has accrued, if the claim be by the original contractor; thirty days, if by a journeyman or day laborer; and four months, if by any other person seeking to obtain the benefit of the provisions of the act. This section then proceeds to declare, that the "statement of account and description, when so filed, shall be a lien upon the building, or other improvements, with all the rights and privileges under this chapter, from and after such filing."

It will be observed that, under the first named of these sections, the lien given is *preferred* to all other incumbrances which may be *attached*, "subsequent to the commencement of such buildings or improvements." This language, if it stood alone, is simple and explicit, and would have no margin for construction. It fixes a definite time when the lien shall attach—the commencement of the building or improvement. Under the other, it is declared, that the "statement of account and description, when so filed, shall be a lien." This filing may be four or six months after the indebtedness has accrued, which will generally be at the completion of the building or improvement. Construed alone, this language would import that the lien does not attach until the claim is filed; for, *inclusio unius est exclusio alterius.* Such is the implication when language such as this, unexplained by anything precedent or subsequent, comes up for interpretation. But both the clauses we are commenting on are found in one and the same statute, enacted at one and the same time. It is our duty to harmonize these provisions, if we can, and to give to each word and sentence its due weight in arriving at the legislative will. If we hold that the language employed in section 3444 means that the lien does not attach until the claim is filed, we nullify the provision in section 3442, which gives a preferred lien from the commencement of the building or improvement. This, we think, we are forbidden to do. We feel it our duty to give to section 3442 the effect its language expresses, and hold that the lien attaches from the commencement of the building or improvement. This lien, however, is liable to be defeated and lost, if the claim be not verified and filed with the judge of pro-

bate within the time prescribed by section 3444 of the Code. When so verified and filed, the lien becomes complete. Till then, it is inchoate and defeasible. This gives some operation to that part of section 3444 we have been commenting on, and is the best solution we can give of the apparent repugnancy in the two provisions of the statute.

2. The question remains, who are entitled to this preferred lien, which dates from the commencement of the building or improvement? We do not doubt that a contractor, who, by the terms of his contract, binds himself to do the labor, or to furnish the materials and do the labor, acquires a lien for both materials and labor, when he commences the work. As to what constitutes a commencement of work, see brief of appellee; also, Phillips on Mech. Liens, §§ 216 to 219, inclusive; *Pennock v. Hoover*, 5 Rawle, 291; *Fleming v. Bumgarner*, 29 Ind. 424; *Gordon v. Torrey*, 15 N. J. 112. Nor do we doubt that when, by the terms of the contract, one person is to do the labor, and another is to furnish the materials, the lien of each attaches from the time he commences the performance of his contract, As to the mechanic, this is unquestionably the rule; and it works no hardship to the person subsequently purchasing the property, or acquiring a lien on it. Commencement of the building is a patent fact, which all persons can see and know; and persons dealing in reference to such property are put on inquiry, and justly chargeable with knowledge of all that inquiry would lead to—namely, that there is, or may be, a mechanic's lien under the statute. Such is the argument in vindication of this whole field of legislation, and its moral equities. The legislature aimed at protection to a meritorious class of citizens, and did not intend to provide a snare that might entrap *bona fide* purchasers.

The record in this case informs us, that the contractor was to do the work, while Bickford, the owner of the lot and employer, was to furnish the materials. The building had been commenced, but was not completed. At this stage, Welch, the appellant, lent money to Bickford, and took a mortgage on the lot having the unfinished house on it. If Bickford was in arrears to the contractor, for work done, or to be done, under contract previously made, or to him or another for materials furnished, or to be furnished, under like prior contract partly executed, then Welch was not an innocent purchaser, but stood charged with notice of all information that inquiry would have led to. As to him and all others, the building was commenced. But, inasmuch as Porter & Co., the appellees, had, at that time, not only furnished no materials for the building, but had no contract for

[Welch v. Porter & Co.]

furnishing such materials, there was nothing to put Welch on inquiry as to their claim, and no inquiry could have led to the discovery of material information. Nothing existed to be discovered. If we were to hold that, because a building had been commenced, a subsequent contractor or material-man could acquire a lien, which would take precedence over an intervening incumbrance, we think we would shock the moral sense of the profession, and fail to carry out the intention of the legislature. Let us show, by an illustration, to what consequences such doctrine would lead. A mechanic commences a building, but, for some cause, fails to complete it. He has forfeited his claim for compensation, or has been paid, and has no claim which can support a lien. An incumbrance is then created on the property, by mortgage or otherwise. Subsequent to the creation of this incumbrance, another mechanic is employed to complete the work and finish the building. Will his lien date back to the commencement of the building by his predecessor, and thus be preferred to that of the intervening incumbrancer? We suppose no one would contend for such a result as this, and yet we can perceive no difference, in principle, between the claim of such subsequent contractor, and that of a material-man who furnishes materials under a contract made after the creation of the incumbrance.

In the case of *Soule & Page v. Dawes*, 7 Cal. 575, speaking of the liens of mechanics, the court said: "All persons who deal with the property, during the progress of the work, are charged with notice of the claim of the contractor. But if, after informing himself of the nature and amount of the contractor's claim, he takes a conveyance of the property subject to it, I know of no rule of law, and certainly no principle of equity, which enables the parties, by a subsequent contract, or by an alteration in the existing contract, to deprive him of the benefit of his purchase, by creating an incumbrance on the property, which was not contemplated in the original contract." This language is quoted, as part of the text, in Phillips on Mechanics' Liens, § 217. See, also, *Fleming v. Bumgarner*, 29 Ind. 424. On the questions we have been discussing, see *Gordon v. Torrey*, 15 N. J. Eq. 112; *Schaeffer v. Lobman*, 34 Mo. 68; *Crowell v. Gilmore*, 13 Cal. 54.

We feel no hesitation in declaring that, where a building or improvement is commenced under one contract, and materials are subsequently contracted to be furnished, and are furnished under a separate and independent contract, not embraced or provided for in the original agreement, the lien of the material-man does not attach from the actual com-

mencement of the building or improvement, nor at any other time anterior to the contract under which the materials are furnished. This is decisive of this suit, as the facts clearly appear in the bill of exceptions. Instead of the charge given on the facts hypotheticated, the charge should have been that, on the facts in this case, as shown by the evidence, if believed, the defendant was entitled to a verdict.

The appellees, according to the evidence, are not without a lien. They have a lien on the property, "to the extent, and only to the extent, of all the right, title, and interest owned therein by the owner or proprietor of such building [Bickford] for whose immediate use or benefit the labor was done, or things furnished."—Code, § 3441. They have a lien, also, which the statute declares "shall attach to the building, erections, or improvements, only for which they were furnished, or the work was done, in preference to any prior lien, incumbrance, or mortgage upon the land upon which such buildings, erections, improvements, or machinery has been erected or put."—Section 3442. To what extent this latter lien attaches, whether to the whole structure, or only to the materials which were furnished, is a question not raised by this record, and we need not decide it. It has not been discussed, and we withhold our opinion until the question properly arises. We state other questions which may arise under this statute, merely for the purpose of announcing that they are not intended to be now decided. First, when, by the terms of the contract, the work and labor are performed by the contractor, and materials furnished by a material-man under an independent, original contract, does the lien of the latter attach when his contract to furnish is made and the contractor commences work under his contract, or does it attach only from the time he commences to furnish materials by actual delivery? Second, at what time, and to what extent, does the lien of a laborer, journeyman, employe or sub-contractor attach?

What we have said above renders a decision of all other questions unnecessary.

Reversed and remanded.