ALBERT J. RIVARD *et al. vs.* BIJOU FURNITURE COMPANY.

JULY 31, 1942.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

For former opinion, see 67 R. I. 251.

CONDON, J. After the filing of our opinion in this cause on July 23, 1941, (21 A 2d. 563) 67 R. I. 251, the United States moved for a reargument, which was granted on October 23, 1941. At the reargument the United States was restricted in its argument to two grounds: (1) That the opinion of this court failed to dispose of the claim of the United States for capital stock taxes in the amount of $3.30; and (2) that the opinion erroneously treated the claim of the United States for taxes under Title VIII of the social security act as a claim under Title IX of that act.

We shall consider these grounds in that order. We think the matter of the payment of the capital stock taxes was at least impliedly considered in our former opinion. It was held therein that, by virtue of § 3466 of the Revised Statutes of the United States, taxes due to the United States were entitled to priority over all taxes due to the state of Rhode Island, excepting, however, such taxes as were due under the provisions of the state unemployment compensation act, which act was enacted pursuant to the provisions of Title IX of the social security act. We held, in effect, that the latter taxes were entitled to be considered of equal rank with the taxes due the United States under Title VIII of that act in providing the revenues necessary to carry out the policy of the act as declared by congress.

We further held, however, that the *employee* contributions, both under Title VIII and under the state unemployment compensation act, stood in a special relation to all other taxes, because of the manner in which they were required to be paid, that is, withheld by the employer. For this reason we felt that such contributions, by force of the respective statutes, constituted special trust funds, and that the claim of the United States under Title VIII and the claim of the state of Rhode Island under the state unemployment compensation act for such contributions ought to be paid in full before other taxes.

We then said that the employer contributions under each act should be paid *pro rata* from whatever balance was left

in the hands of the receiver. Of course we did not intend thereby to hold that the payment of the capital stock taxes due the United States was to be postponed. On the contrary, we intended to go no further than to hold that the employer contributions under the state unemployment compensation act were entitled to equal consideration with all federal taxes notwithstanding R. S. § 3466.

Under the second ground of its motion, the United States contends that we assumed in our former opinion that its claim for taxes under the social security act arose under Title IX thereof. This is a misconception. What we said was that, although the claim of the United States under Title VIII and the claim of the state of Rhode Island under the state unemployment compensation act, "arise under different statutes, yet, in so far as the two statutes deal with the common subject of unemployment compensation, they are interlocking statutes, closely interrelated and dependent on each other to effectuate a common purpose." This statement, read in its context in our former opinion, does not mean what has been urged above by the United States. In any event, it was not so intended.

Perhaps a little amplification may make our meaning clearer. We take the view that the state unemployment compensation act, which was enacted by Rhode Island pursuant to the provisions of Title IX of the social security act, is, in effect, an integral part of that title. As such, its revenue provisions for carrying out its purposes were, in our opinion, intended by congress to be on a par with the revenue provisions of the social security act. In that act congress was legislating in furtherance of a general policy expressly declared in the act. That policy was the safeguarding of the economic security of the masses of the people who were dependent upon the continuance of regular, gainful employment for their livelihood.

Both Title VIII and Title IX were designed to effectuate that policy. Each is predicated upon the importance of constant mass employment and the necessity for meeting the

shocks of cyclical mass unemployment and of recurring periods of individual unemployment, terminating finally, in the individual, in a supposed superannuation or ultimate unemployability. Title VIII looks to the future and seeks to afford the worker security when that ultimate unemployability stage has been reached. Title IX, on the other hand, is designed to operate more largely in the present by providing a pool by means of which not only the individual worker may be tided over periods of individual unemployment but also by means of which the country as a whole may be saved from the severe economic shocks of cyclical periods of mass unemployment.

The revenues necessary to provide the means for effectuating these ends are derived from the application of similar revenue-raising methods under each title, the only difference being that the United States has, itself, undertaken exclusively the carrying out of the objects of Title VIII, whereas it has left the carrying out of the objects of Title IX to the states acting in conjunction with the United States and has sought therein to induce the states to co-operate in the work. Under Title IX the United States levies a tax on employers in every state, but if the employer's state has enacted an unemployment compensation act in accordance with the conditions set out in that title, the employer is granted a credit of 90% of such tax. In this way congress seeks to invite the co-operation of the several states with the United States in effectuating this part of the national policy of the social security act. It was because of this co-operative feature of the act that the United States Supreme Court could say, as it did in *Steward Machine Co.* v. *Davis,* 301 U. S. 548, that the *needs of the federal treasury* could be cared for as well by payment of unemployment compensation contributions to the states as by payment of taxes to the United States.

But the United States further contended on the reargument that such a view was erroneous as it raises by implication an exception to the explicit provisions of R. S. § 3466

which congress did not reasonably intend. In support of this contention, it is urged that the supreme court has recently decided a case which indicates a contrary view to the one we hold. *United States* v. *New York,* No. 238, October Term, 1941, filed March 2, 1942. We have carefully read that case, and, in our opinion, it does not touch upon the precise question here. Moreover, far from being of assistance to the United States in the contention which it makes here, the court seems to entertain a view of the scope and purpose of Title IX that is not unlike what we hold. Thus on page 5, the court, speaking through Mr. Justice Byrnes, says: "Either the state or the federal government must provide the money to meet the requirements of relief to the unemployed. By his contributions to the state, an employer has diminished the demand upon the *financial resources of the federal government.*" (italics ours)

Another case which has been decided by the supreme court since our former opinion was filed has been cited to us by the United States to show that R. S. § 3466 must be applied to the case at bar. *United States* v. *Emory,* No. 33, October Term, 1941, filed December 15, 1941. That case involved the national housing act. It was contended in that case, among other contentions, that because of the objectives and provisions of that act, congress must have impliedly intended to surrender the priority accorded to the United States under R. S. § 3466. The court rejected this contention but was closely divided.

Apparently the court divided on the question whether the national housing act ought to be given the same construction with reference to R. S. § 3466 as was given to the national banking act in *Cook County National Bank* v. *United States,* 107 U. S. 445, and to the transportation act of 1920 in *United States* v. *Guaranty Trust Co.,* 280 U. S. 478. In each of those cases it was held that § 3466 was inapplicable because, from the nature of the legislation, congress impliedly intended that the United States should have no priority under that section. The majority in the *Emory* case felt that such in-

tention could not reasonably be found in the national housing act.

In the case at bar we are concerned with an act which differs widely from the national housing act. That act contains no comparable provisions to Titles VIII and IX of the social security act. The fiscal provisions of both of those titles, as well as the co-operative feature of Title IX, especially distinguish the social security act from the national housing act. Therefore, we do not think that the construction of that act in the *Emory* case is either a precedent or a safe guide for the construction of the social security act in the case at bar.

The United States has also cited two other very recent cases which, it urges, lend some support to its contention, although neither involved the precise question here. *United States* v. *Texas*, U. S. Supreme Court, October Term, 1941, filed December 22, 1941, and *Matter of White Plains Oil Corp.*, N. Y. Court of Appeals, November 27, 1941. We have read each of those cases and we do not think either one assists the United States under the facts of the instant case.

We are dealing here with a statute under which the state of Rhode Island has formally accepted the invitation of the United States to cooperate with it in ameliorating the national evil of unemployment. The fact that this statute is broader than required under Title IX of the social security act in that it includes employers of four or more persons, whereas Title IX applies to employers of eight or more persons, we think makes no difference, since the statute complies with all the conditions set out in Title IX as prerequisites to its acceptance by the United States as a part of the system established by the social security act. In the taxes which the state has imposed upon employees and employers in order to carry out the will of congress, there is apparent the practical working out of the cooperative scheme or plan which congress devised in order that the national treasury might be relieved of much of the financial burden imposed upon it by the great evil of nation-wide unemployment.

These taxes are, therefore, in their nature taxes imposed to promote an expressed federal policy as distinguished from a merely exclusive state purpose.

In arguing to the supreme court in support of the constitutionality of the social security act in *Steward Machine Co. v. Davis, supra,* Mr. Justice Jackson, then assistant attorney general of the United States, speaking of the credit allowed to an employer whose state has enacted a satisfactory unemployment compensation act, said: "This credit goes beyond those credits which serve purely personal purposes. It serves the fiscal purpose of the Treasury of the United States. This person who has contributed 90 per cent. of this tax to the unemployment fund of his State has to that extent relieved the Federal Government of what is assumed to be an obligation to take up certain duties, when unemployment passes the capacity of the State to handle it."

On such reasoning, that the scheme of Title IX was designed to serve "the fiscal purpose of the Treasury of the United States", the supreme court was moved, in the *Steward Machine Co.* case, to sustain the constitutionality of the act. Hence, the court, speaking through Mr. Justice Cardozo, said: "The Social Security Act is an attempt to find a method by which all these public agencies (state and federal) may work together to a common end." (p. 588) And later, at page 590, in speaking of the intention of congress, he said: "The purpose of its intervention, as we have shown, is to safeguard its own treasury and as an incident to that protection to place the state upon a footing of equal opportunity." Thus in the *Steward Machine Co.* case the court apparently took the view that the enactment by a state of an unemployment compensation act in accordance with the conditions set out in Title IX satisfied, in some degree, a fiscal need of the federal government.

We have given most careful consideration to the contentions advanced by the United States in the reargument of the case and we do not find that there is any sufficient reason for altering our former opinion. The conclusion stated

therein may stand except that it is to be understood that after the claim of the United States for employee contributions under Title VIII and the claim of the state for employee contributions under the state unemployment compensation act are paid in full, the balance of the funds in the hands of the receiver is to be paid *pro rata* to satisfy the claims of the United States for capital stock taxes and for employer contributions under Title VIII, and the claim of the state of Rhode Island for employer contributions under the state unemployment compensation act.

The parties may present to this court a form of decree, in accordance with this opinion, to be entered in the superior court.

*R. De Blois La Brosse,* for complainant and receiver.

*Michael De Ciantis,* general counsel, *Marshall B. Marcus,* assistant general counsel, for the State of Rhode Island.

*George F. Troy,* United States attorney, *Joseph Veneziale,* assistant United States attorney, *Samuel O. Clark,* assistant attorney general, *J. Louis Monarch, Alvin J. Rockwell, C. Stanley Titus,* special assistants to the attorney general, for the United States.