ILLINOIS ex rel. GORDON, DIRECTOR OF LABOR, *v.* CAMPBELL, COLLECTOR OF INTERNAL REVENUE.

No. 35.   Argued March 28, 1946.   Reargued November 19, 1946.—
Decided December 23, 1946.

[39] See note 30.

*Albert E. Hallett,* Assistant Attorney General of Illinois, argued the cause for petitioner. With him on the brief was *George F. Barrett,* Attorney General.

*J. Louis Monarch* argued the cause for respondent. With him on the brief were *Solicitor General McGrath, Sewall Key* and *Helen Goodner.*

MR. JUSTICE RUTLEDGE delivered the opinion of the Court.

This case was companion to *Illinois ex rel. Gordon* v. *United States,* 328 U. S. 8, decided last term, but brings for settlement other problems raised by a conflict of claims between the United States and the State of Illinois. The conflict concerns whether one or the other claimant is entitled to priority of payment from assets of a common debtor. The Illinois Supreme Court dealt with both cases in a single opinion. 391 Ill. 29, 62 N. E. 2d 537. Certiorari was granted in each. 327 U. S. 771; 327 U. S. 772. On the same day that *Illinois ex rel. Gordon* v. *United States, supra,* was decided, this case was restored to the docket and assigned for reargument before a full bench, because of the presence of the questions not determined by that decision.

The controversy arose on June 29, 1942, when the Director of Labor of Illinois brought suit in the Circuit Court of Cook County, Illinois, to enforce against the Chicago Waste and Textile Company a statutory lien for unemployment compensation contributions due the state. Associated Agencies, Inc.,[1] was a creditor of the Chicago Waste and Textile Company. In his complaint the Director alleged that Associated Agencies had obtained a judgment against its debtor in the Municipal Court of Chicago

---

[1] Associated Agencies was made a defendant in the suit brought by the Director of Labor.

and that execution had issued on this judgment June 3, 1942, but that the interest of Associated Agencies was subordinate to that of the lien sought to be foreclosed. This, "for the reason that the execution upon said judgment was issued long after notice of the lien of the Director of Labor was recorded with the Recorder of Deeds." [2] The Director alleged further, upon information and belief, that the Chicago Waste and Textile Company was insolvent and that "the personal property subject to the lien herein being foreclosed, is scant security for the debt due the Director of Labor . . . and that unless a receiver be appointed for all of the said property, pending a full and complete hearing upon the issues herein, the plaintiff will suffer financial loss and said property will be wasted."

Granting the immediate relief requested, the Circuit Court enjoined all creditors of the Chicago Waste and Textile Company from interfering with the property of the company, whether by judicial action [3] or otherwise, and also appointed a receiver "for the property of the Chicago Waste and Textile Company."

Subsequently respondent, the Collector of Internal Revenue for the First District of Illinois, filed claims on behalf of the United States amounting to $1,954.07 plus interest. Of this amount, $522.91 was for federal insurance contribution taxes and $1,431.16 was for federal unemployment taxes. Of the federal insurance contribution taxes, $229.91 represented employees' taxes, see *Helvering* v. *Davis,* 301 U. S. 619, collected by the employer under stat-

---

[2] As exhibits to the Director's complaint three notices of lien were filed, one for $225.51, one for $303.29, and one for $259.65. Although these aggregate $788.45, the lien sought to be foreclosed was for $767.29. See note 12.

[3] The property of the Chicago Waste and Textile Company was to be sold at public auction at the behest of Associated Agencies. The injunction prevented this sale.

utory withholding provisions. I. R. C. §§ 1400, 1401. The Collector also filed an intervening petition, alleging that the debtor was insolvent and asking that the claims of the United States be allowed as claims entitled to priority of payment immediately after costs of administration and before payment of other creditors. The Director of Labor answered, denying that the claims of the United States were entitled to priority over the claims of Illinois.

The receiver realized $677.81 from sale of the debtor's property and this amount was deposited with the clerk of the Circuit Court. A hearing was held, and the court ordered that ninety per cent of the funds on deposit be given to the Director of Labor and the other ten per cent to the United States. The Collector appealed to the Appellate Court for the First District. On motion of the appellee, the cause was transferred to the Supreme Court of Illinois on jurisdictional grounds.

The state Supreme Court held that the United States was entitled to priority over the State of Illinois as to its claim for federal insurance contribution taxes.[4] Whether it was correct to award this priority is the issue we now have to decide.

*Illinois ex rel. Gordon* v. *United States,* 328 U. S. 8, held that in circumstances which called into application Rev. Stat. § 3466, 31 U. S. C. § 191, the claims of the United States for federal insurance contributions taxes under Title 8 of the Social Security Act, 49 Stat. 620, 636, and for federal unemployment compensation taxes under Title 9 of the Social Security Act, 49 Stat. at 639, had priority over claims of Illinois for taxes under its Unemploy-

---

[4] This did not exhaust the fund, and the court awarded the balance to the Director of Labor, instead of to the United States in part payment of its claim for federal unemployment taxes. 391 Ill. 29, 32–34. See also *United States* v. *Spencer,* 65 F. Supp. 763. The United States has not petitioned for certiorari, and therefore the correctness of this disposition of the balance of the fund is not now in controversy.

ment Compensation Act.[5] That decision is controlling, of course, upon the same feature of this case, although the federal insurance contributions taxes claimed by the United States arise under the 1939 amendments of the Social Security Act, rather than, as in the case last term, under the original act itself. Compare §§ 801, 802, 804, 807 (c) of the original Social Security Act, 49 Stat. 620, with §§ 1400, 1401, 1410, and 1430 of the Internal Revenue Code, 53 Stat. 175, as amended by 53 Stat. 1381.

## I.

But the state urges that § 3466 does not apply in the facts of this case. This argument, as well as another, that the lien of the state was so specific and perfected as to defeat the priority, if any, of the United States under Rev. Stat. § 3466, must be met before the case can be affirmed on the authority of *Illinois ex rel. Gordon* v. *United States, supra.*

Rev. Stat. § 3466 provides:

"Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or

---

[5] Jones Ill. Stat. Ann. (1944) §§ 45.128–45.161. The argument of the state in that case was that, since Title 9 contained "provisions intended to induce states to set up sound unemployment compensation in accordance with congressionally prescribed standards" and "to this end" permitted the states "to build up their own funds by collection from employers within the state of 90% of the tax those employers would otherwise have to pay to the Federal Government," it was Congress' intention to give states priority over the United States for their unemployment compensation claims. This argument was applicable, it may be noted, only to federal unemployment compensation taxes and not to federal insurance contributions taxes, which are the only ones involved in this case, since as to federal insurance contributions taxes there are no provisions for federal-state cooperation as there are in Title 9. Compare *Helvering* v. *Davis,* 301 U. S. 619, with *Steward Machine Co.* v. *Davis,* 301 U. S. 548. See also *Rivard* v. *Bijou Furniture Co.,* 68 R. I. 358, 361, 27 A. 2d 853.

administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

The fifth act of bankruptcy, which is the one on which the Government relies as having brought § 3466 into operation, consists of a person's [6] having,

"(5) while insolvent or unable to pay his debts as they mature, procured, permitted, or suffered voluntarily or involuntarily the appointment of a receiver or trustee to take charge of his property . . . ." 52 Stat. 844, 11 U. S. C. § 21 (a).

The state contends, first, that the receiver appointed at its instance was not a receiver within the meaning of this provision and, second, that the Chicago Waste and Textile Company was not shown by the record to be insolvent.

This Court has noted that the view has been expressed that to satisfy the fifth act of bankruptcy "the receivership must be general, as contrasted with a receivership incidental to the enforcement of a lien." *Duparquet Huot & Moneuse Co.* v. *Evans,* 297 U. S. 216, 224.[7] It has

---

[6] The Bankruptcy Act uses the term "person," 11 U. S. C. § 21 (a), but the Act defines "persons" as including "corporations, except where otherwise specified, and officers, partnerships, and women . . . ." 52 Stat. 841, 11 U. S. C. § 1 (23).

[7] Since decision of the *Evans* case, the fifth act of bankruptcy has been amended to include appointment of a receiver when there is insolvency in the equity sense as well as in the bankruptcy sense. See

not determined the correctness of that view, *Emil* v. *Hanley,* 318 U. S. 515, 521, n. 5, nor need we do so now. For, though the receiver was appointed at the instance of a secured creditor, as in *United States* v. *Texas,* 314 U. S. 480, 483–484, "any limitations upon the operation of § 3466 [which] might otherwise have flowed from this circumstance . . . were removed by the subsequent character of the proceeding." The receiver was placed in control of all the assets of the Chicago Waste and Textile Company, and all of the assets were liquidated. At least one party other than the secured creditor which had instituted the proceeding, namely, the United States, was allowed to intervene and was heard. "We think that realities require us to treat the proceeding as a general equity receivership within the scope of § 3466." *United States* v. *Texas, supra.*

Moreover, it is questionable whether the fact of insolvency is properly contestable by the State of Illinois. The receiver was appointed upon the allegations of its complaint, which included insolvency, and the state admitted in its answer to the Government's intervening petition that the debtor was insolvent. Although ordinarily the doctrine of estoppel or that part of it which precludes inconsistent positions in judicial proceedings is not applied to states,[8] in the present litigation Illinois is in the position of any lien creditor.

It would seem therefore that in these circumstances the state should be held estopped to contest insolvency. But in any event the record demonstrates that the debtor was insolvent at the time of the appointment of the receiver,

1 Collier on Bankruptcy (14th ed.) 475. But under the amended statute the same view has been expressed. *Elfast* v. *Lamb,* 111 F. 2d 434, 436.

[8] See Note (1946) 59 Harv. L. Rev. 1132, 1136.

for when its property was liquidated there was not enough to satisfy the claims of the two contesting creditors at the bar.

Thus, the fifth act of bankruptcy was committed and in consequence the United States has the benefit of the priority given it by Rev. Stat. § 3466. We therefore turn to the argument of the state that the specificity of its lien defeated this priority.

## II.

The United States was given the priority, now incorporated in Rev. Stat. § 3466, in 1797. 1 Stat. 515.[9] See also the discussion in *Price* v. *United States,* 269 U. S. 492, 500–501. Yet the Court has never decided whether the priority is overcome by a fully perfected and specific lien. See Rogge, The Differences in the Priority of the United States in Bankruptcy and in Equity Receiverships (1929) 43 Harv. L. Rev. 251, 267–270. The question, however, has been reserved many times in express terms. See *Conard* v. *Atlantic Insurance Co.,* 1 Pet. 386, 442; *Brent* v. *Bank of Washington,* 10 Pet. 596, 611–612; *Spokane County* v. *United States,* 279 U. S. 80, 95; *New York* v. *Maclay,* 288 U. S. 290, 294; *United States* v. *Texas,* 314 U. S. 480, 485–486; *United States* v. *Waddill Co.,* 323 U. S. 353, 355.[10] And again we need not decide it,

---

[9] There are minor differences in phraseology between 1 Stat. 515 and Rev. Stat. § 3466, which "did not work any change in the purpose or meaning . . . ." *Price* v. *United States,* 269 U. S. 492, 501.

[10] The statement in *United States* v. *Knott,* 298 U. S. 544, 551, that "such an interest [an inchoate general lien created by the laws of Florida] lacks the characteristics of a specific perfected lien which alone bars the priority of the United States" was not intended to settle the problem and may be taken to have been made with reference to the early mortgage lien cases discussed and distinguished in *United States* v. *Texas,* 314 U. S. at 484–485, and *New York* v. *Maclay,* 288 U. S. at 293–294.

for we are of the opinion that the Illinois lien was not sufficiently specific or perfected, in the purview of controlling decisions, to defeat the Government's priority.

The effect and operation of a lien in relation to the claim of priority by the United States under Rev. Stat. § 3466 is always a federal question. "The priority given the United States cannot be impaired or superseded by state law." *United States* v. *Oklahoma,* 261 U. S. 253, 260. Hence a state court's characterization of a lien as specific and perfected is not conclusive. *United States* v. *Waddill Co.,* 323 U. S. 353, 357. The state characterization, though entitled to weight, is always subject to reexamination by this Court.

On the other hand, if the state court itself characterizes the lien as inchoate, this characterization is practically conclusive. "Whatever might have been the effect of more completed procedure in the perfecting of the liens under the law of the State, upon the priority of the United States herein, the attitude of the state court relieves us of consideration of it." *Spokane County* v. *United States,* 279 U. S. 80, 95; cf. *United States* v. *Knott,* 298 U. S. 544.

In this case the United States argues that the Illinois Supreme Court judged the lien of the state inchoate and that therefore we may affirm its judgment on this basis. Illinois, however, disputes this reading. It states that the Illinois court did not consider the nature of the lien in relation to the facts presented by this case, but merely determined that under the facts of *Illinois ex rel. Gordon* v. *United States, supra,* the lien had not become choate. We can hardly accept this view in the face of the judgment rendered and the opinion's statement of the facts of this case at the outset, together with the later explicit reference to it in holding the lien not of a sort to defeat the federal priority. But we do not stop to analyze the opinion of the Supreme Court of Illinois in detail. For it is clear, quite

apart from the opinion, that the lien was not so specific and perfected as to defeat the priority of the United States, if that is at all possible.

The statute under which the Illinois lien arises is set out in the margin.[11] The state asserts that the lien became specific and perfected when notice of lien had been filed and recorded [12] and when the receiver had been appointed. In its view, upon appointment of the receiver "all substantial aids to the enforcement of the State's lien had been utilized."

With this conclusion we do not agree. It is true that the filing of notice of lien determined the amount of the lien, though the state may have computed wrongly the

---

[11] "A lien is hereby created in favor of the Director *upon all the personal property or rights thereto owned or thereafter acquired by any employer and used by him in connection with his trade, occupation, profession or business,* from whom contributions, interest or penalties are or may hereafter become due. Such lien shall be *for a sum equal to the amount at any time due* from such employer to the Director *on account of contributions, interest and penalties* thereon. Such lien shall attach to such property at the time such contributions, interest or penalties became, or shall hereafter become, due. In all cases where a report setting forth the amount of such contributions has been filed with the Director, no action to enforce such lien shall be brought after three years from the date of the filing of such report and in all other cases no action to enforce such lien shall be brought after three years from the date that the determination and assessment of the Director made pursuant to the provisions of this Act became final." Jones Ill. Stat. Ann. (1944) § 45.154 (a). (Emphasis added.) See also note 2.

[12] "Such lien shall be invalid only as to any innocent purchaser for value of stock in trade of any employer in the usual course of such employer's business, and shall be invalid as to any innocent purchaser for value of any of the other assets to which such lien has attached, unless notice thereof has been filed by the Director in the office of the Recorder of Deeds of the county within which the property subject to the lien is situated. . . ." Jones Ill. Stat. Ann. (1944) § 45.154 (b) (1). See note 2.

amount of taxes owed it.[13]   See *United States* v. *Waddill Co.,* 323 U. S. at 357–358.   But it is not enough that the amount of the lien be known.   The lien must attach to specific property of the debtor.   This the Illinois lien had not done at the time the receiver was appointed.[14]   Indeed, as was stated at the argument, not only was the property not in the hands of the bailiff, but so far as appears the amount or type of property belonging to the debtor was not known to the state.

Under the Illinois law, where it is sought to foreclose a lien for unemployment compensation taxes it is not necessary for the Director in his complaint to describe the property to which said lien has attached.[15]   On the contrary by express provision,

> ". . . it shall be the duty of the employer against whom such petition has been filed to file in said proceedings, a full and complete schedule, under oath, *of all personal property and rights thereto which he owned at the time the contributions,* upon which the lien sought to be foreclosed is based, *become due, or which he subsequently acquired, indicating* upon such schedule the property so owned by such employer *which was, or is used* by such employer *in connection with his trade, occupation, profession or business,* and if such employer shall so fail to do after having been

---

[13] Cf. note 2.

[14] The priority of the United States attaches upon appointment of the receiver.   *United States* v. *Oklahoma,* 261 U. S. 253, 260; *Spokane County* v. *United States,* 279 U. S. 80, 93.

[15] Jones Ill. Stat. Ann. (1944) § 45.154 (e) provides for enforcement of the lien by judicial proceedings for foreclosure.   The section states: "In all such cases, it shall not be necessary that said petition describe the property to which said lien has attached"; and continues with the further language quoted in the text.

so ordered by the court, he may be punished as in other cases of contempt of court." Jones Ill. Stat. Ann. (1944) § 45.154 (e). (Emphasis added.)

Not until the debtor has filed the required schedules [16] would the state know the amount of property in the debtor's possession or, more important, the property to which the lien attached. For the lien attaches only to personal property used by the employer "in connection with his trade, occupation, profession or business . . . ."

The appointment of a receiver, then, was only an initial step in the perfection of the lien. It, together with the injunction, protected whatever rights in the property the state might have. But it was not a final assertion or attachment of rights to specific property, as is, for example, the enforcement of a judgment by execution and levy. *Conard* v. *Atlantic Ins. Co.*, 1 Pet. 386, 443–444.

The state has not relied merely upon the recording of the notices of lien but has rested on this together with the receiver's appointment as accomplishing the required specificity and perfection. But now it is said the filing of the notices alone achieved this result. Neither view is correct. Both have been repudiated by repeated decisions of this Court, the latest being *United States* v. *Waddill Co., supra.*

It has never been sufficient to show merely a general lien, effective to protect the lienor against others than the Government, but contingently on taking subsequent steps either for giving public notice of the lien or for enforcing

---

[16] In his complaint the Director of Labor prayed, "that an order be entered by this Honorable Court commanding that the defendant, Chicago Waste & Textile Co., a corporation, file within a short day to be fixed by the Court, a full and complete schedule under oath, of all personal property and rights thereto, which it owned on the 1st day of May, 1941, or thereafter acquired, and to indicate upon such schedule the property so owned by it which was or is used by it in connection with its trade, occupation, profession or business."

it.[17]  *Conard* v. *Atlantic Ins. Co.,* 1 Pet. 386, 444; *United States* v. *Waddill Co., supra.* The federal priority is not destroyed by state recording acts any more than by state statutes creating or otherwise affecting liens, if the lien as recorded or otherwise executed does not have the required degree of specificity and perfection.   Under the decisions the test is not, and cannot be, simply whether by his taking further steps the lienor's rights will be enforced against others than the Government.

The long-established rule requires that the lien must be definite, and not merely ascertainable in the future by taking further steps, in at least three respects as of the crucial time.   These are: (1) the identity of the lienor, *United States* v. *Knott,* 298 U. S. 544, 549–551; (2) the amount of the lien, *United States* v. *Waddill Co.,* 323 U. S. at 357–358; and (3) the property to which it attaches, *United States* v. *Waddill Co., supra; United States* v. *Texas, supra; New York* v. *Maclay, supra.*   It is not enough that the lienor has power to bring these elements, or any of them, down from broad generality to the earth of specific identity.

In this case the identity of the lienor was made certain, before the Government's priority attached, both by the statute and by the notices of lien.   The latter also fixed the amounts of the liens, though miscalculated.   But neither the notices of lien nor the appointment of the receiver made definite and certain the property, as we have shown.

Here, as in *United States* v. *Texas,* 314 U. S. at 487, ". . . 'property devoted to or used in his business . . .' is neither specific nor constant."   As in *United States* v. *Waddill Co.,* 323 U. S. at 359, the goods subject to the lien had not "severed themselves from the general and free assets of the tenant [owner] from which the claims of the United

---

[17] See the authorities cited in the text at the beginning of Part II of this opinion.

States were entitled to priority of payment." Here, as in that and other cases, there was merely "a *caveat* of a more perfect lien to come," *New York* v. *Maclay,* 288 U. S. at 294, whether tested by state law, 323 U. S. at 357, or by perfection "as a matter of actual fact, regardless of how complete it [the lien] may have been as a matter of state law." *Ibid.,* 358. The state has acquired neither title nor possession, *Thelusson* v. *Smith,* 2 Wheat. 396; *New York* v. *Maclay,* 288 U. S. 290, since the receiver's possession was that of the court, not of the state, and did not sever the property from the debtor's general assets as of the crucial date.

To permit the recording of the notices or the receiver's appointment, or both, in circumstances like these, to overcome the Government's priority would be in substance to overrule the numerous decisions cited in which liens no less "specific and perfected" have been held impotent for that purpose. It would open the door, too, we think, to substantial nullification of the Government's priority. For then this could be accomplished simply by recorded notices of lien, disclosing claims to property not segregated from the debtor's general estate; designated only by general words of classification, including after-acquired property as here; and ascertainable definitively only by further procedures. Congress alone should make such a change, if it should be made at all.

The judgment is affirmed.[18]

Mr. Justice Reed, dissenting.

In my opinion the notices of lien caused to be duly recorded by Illinois on April 3, May 8 and May 20, 1942,

---

[18] As we affirm the judgment on the ground that the United States under Rev. Stat. § 3466 has priority over Illinois as to all federal insurance contributions taxes owing it, we do not consider the argument that, even if this general priority did not exist, the United States would be entitled to the amount of the fund which represents employees' taxes.

with the Recorder of Deeds of Cook County, Illinois, perfected and made specific the state's claim under its unemployment compensation statute. These notices named the creditor and gave his precise address. They stated the amount of the claim and asserted a lien for the aggregate sum upon all the personal property owned and used by the lienee in connection with its business. Under any view of chattel lien law, such a legally recorded instrument would create a lien in the lienor on the personal property owned and used by the taxpayer at his place of business superior to the rights of general creditors or subsequent innocent purchasers for value. This is true by statute in Illinois. Jones Ill. Stat. Ann. (1944) § 45.154 (b) (1), Unemployment Compensation Act of Illinois.

The Court deems that the lien attaches to specific and ascertainable property of the taxpayer only when the taxpayer files his schedule of property in proceedings to enforce the lien.[1]   I deem the recorded notice as the inci-

---

[1] Jones Ill. Stat. Ann. (1944) § 45.154 (e) :

"Foreclosure of lien. In addition and as an alternative to any other remedy provided by this Act, or by the laws of the State of Illinois the Director may enforce the lien herein created by petition in the name of the People of the State of Illinois to the Circuit Court of the county wherein the property subject to the lien is situated, praying that the lien which has attached to said property, be foreclosed and the aforesaid property be sold in the same manner as in cases of foreclosure of mortgages upon personal property in courts of record. In all such cases, it shall not be necessary that said petition describe the property to which said lien has attached and it shall be the duty of the employer against whom such petition has been filed to file in said proceedings, a full and complete schedule, under oath, of all personal property and rights thereto which he owned at the time the contributions, upon which the lien sought to be foreclosed in [is] based, become due, or which he subsequently acquired, indicating upon such schedule the property so owned by such employer which was, or is used by such employer in connection with his trade, occupation, profession or business, and if such employer shall so fail to do after having been so ordered by the court, he may be punished as in other cases of contempt of court."

dent that consummates the lien upon the specific and ascertainable property. The enforcement proceedings after that recordation are only an enforcement of a lien already fixed upon the specific property adequately described in the recorded notice.

The Court suggests that the ruling in *United States* v. *Texas,* 314 U. S. 480, that the statutory lien on "property devoted to or used in his business" is not a specific and fixed lien entitled to priority over the United States, is persuasive that similar words in the Illinois statute are not specific and constant. But in the *Texas* case, no steps had been taken to fix the amount of the lien on the property devoted to the business, p. 487. Of course, therefore, the lien could not be fixed and certain. This final step to perfect the lien had been taken in the present case.

As the Court concludes no specific lien attaches to ascertainable property, I content myself with adding, as to the respective priorities of the United States and a lienor with a specific lien on ascertainable property, that in my opinion such a lienor has priority for his lien despite Rev. Stat. § 3466. See *Thelusson* v. *Smith,* 2 Wheat. 396, 424; *Conard* v. *Atlantic Insurance Co.,* 1 Pet. 386, 441; *United States* v. *Waddill Co.,* 323 U. S. 353, 355.

MR. JUSTICE JACKSON joins in this dissent.