## UNITED STATES v. ALBERT HOLMAN LUMBER CO. et al.

### No. 14310.

United States Court of Appeals
Fifth Circuit.

Aug. 25, 1953.

686

Harvey M. Spear, Sp. Asst. to Atty. Gen., Dept. of Justice, Charles S. Lyon, Acting Asst. Atty. Gen., Ellis N. Slack, Sp. Asst. to Atty. Gen., Fred E. Youngman, Asst. to Atty. Gen., and A. F. Prescott, Asst. to Atty. Gen., Washington, D. C., John D. Hill, U. S. Atty., W. R. Bradford, Asst. U. S. Atty., Birmingham, Ala., for appellant.

Henry Holman Mize and Joseph G. Burns, Tuscaloosa, Ala., Mize & Spiro, Tuscaloosa, Ala., of counsel, for appellees.

Before HUTCHESON, Chief Judge, and BORAH and RUSSELL, Circuit Judges.

BORAH, Circuit Judge.

This is an appeal from a final judgment of the United States District Court for the Northern District of Alabama holding that appellees had materialmen's liens upon the estate of A. M. Price, deceased, which were superior to federal income tax liens claimed by the United States of America, appellant.

The undisputed facts are these. In the year 1946, A. M. Price and Margaret L. Price, husband and wife, purchased a dwelling house and lot in Tuscaloosa, Alabama, described as lot number 2 of Forest Lake Subdivision Number One. In connection with the purchase thereof, Price and his wife on April 16, 1946, executed a purchase money mortgage to the First Federal Savings and Loan Association of Tuscaloosa, which mortgage was filed for record in the Probate Office of Tuscaloosa County on April 18, 1946, and is recorded in the mortgage records. Thereafter, on February 11, 1949, Price and his wife were divorced and in accordance with the terms of an agreed property settlement Margaret L. Price conveyed her interest in the aforementioned property to Price and the latter thereupon became the sole owner thereof, subject to the mortgage. On June 5, 1949, Price married Christine Price and they lived together on the above described property as their homestead until his death on or about December 1, 1949.

During the period of his second marriage and specifically from September to November, 1949, Price repaired and renovated the dwelling house in question. In connection therewith he entered into contracts for building materials with appellees Albert Holman Lumber Company and Allen & Jemison Company under the terms of which Price bought and each of them sold and furnished to him building materials which were used in improving and repairing the dwelling. No part of the indebtedness which Price incurred as a result of these contracts was paid at the time of his death or at any time subsequent thereto, and by reason of his failure to discharge this indebtedness Albert Holman Lumber Company was and is entitled to a materialman's lien on the property in the sum of $757.62 with interest from November 17, 1949, and Allen & Jemison Company was and is entitled to a like lien in the amount of $857.43 with interest thereon from October 20, 1949. These liens were claimed separately and severally as to both the land and the buildings and improvements thereon in the proceedings hereinafter described.

On January 3, 1950, Christine Price, the widow, was appointed as administratrix of the deceased's estate by the Probate Court of Tuscaloosa County and the administration of the estate is still pending in that court. On February 2, 1950, Allen & Jemison Company in compliance with Alabama law[1] and for the purpose of securing its indebtedness filed a verified statement of its

1. Section 37, Title 33, Code of Alabama of 1940 provides in pertinent part:
    "Every mechanic, person, firm, or corporation who shall do or perform any work, or labor upon, or furnish any material * * * for any building or improvement on land, or for repairing, altering, or beautifying the same * * * shall have a lien therefor on such building or improvements and on the land on which the same is situated, to the extent in ownership of all the right, title, and interest therein of the owner or proprietor, and to the extent in the area of the entire lot or parcel of land in a city, town or village * * *."
    Section 41, Title 33, Code of Alabama of 1940 provides in part:

lien in the office of the judge of probate of Tuscaloosa County. On March 9, 1950, Albert Holman Lumber Company for similar reasons filed in the office of the judge of probate a verified statement of its lien. On April 22, 1950, and within the six months period prescribed by Section 42, Title 33, Code of Alabama of 1940, Holman Company filed its bill of complaint in the Circuit Court of Tuscaloosa County against Christine Price individually and as administratrix, the numerous Price children, and the First Federal Savings and Loan Association of Tuscaloosa. The relief prayed was for a decree in its favor and against Christine Price and the Price children for the amount of the lien with interest; for the condemnation and sale of the land and improvements; and for an adjudication of the rights and priorities of Holman Company and the Loan Association. Following the institution of this suit and on April 28, 1950, a suit was filed in the same court by Allen & Jemison Company against Christine Price individually and as administratrix. The prayer was for a recognition of its lien, for a personal decree against respondent in both capacities for the amount of the lien plus interest, and for the condemnation and sale of the property to satisfy the lien.

On or about April 9, 1951, during the pendency of the state court proceedings, jeopardy assessments were executed by the Commissioner of Internal Revenue covering income taxes, interests thereon, and fraud penalties which were assessed against the deceased for the years 1944 to 1947, inclusive. The assessment lists were received on April 12, 1951, by the Collector of Internal Revenue for the District of Alabama, and on April 17, 1951, he filed a notice of tax lien in the Probate Office of Tuscaloosa County in favor of the United States in the total sum of $148,595.05. At that time claims had already been filed in the Probate Court in the total approximate amount of $44,965.69, excluding real property mortgages, and the estimated net value of the property belonging to the estate of the deceased was approximately $50,000.00 over and above the mortgages thereon.

This suit is an outgrowth of the state court proceeding which was instituted by appellee Albert Holman Lumber Company. By an amendment to its bill of complaint filed therein, appellee herein named Allen & Jemison Company and the United States of America as additional parties respondent on the grounds, among others: (1) that in order that those entitled to liens on the property shall have the same protection, the Jemison case should be consolidated with this cause and heard as one, in which the validity of each alleged lien and the priority, if any, of each can be determined and adjusted; and (2) that the tax lien of the United States is inferior to the materialman's lien claimed by the complainant. The amended prayer for relief asked that the rights and priorities of complainant and the respondents First Federal Savings and Loan Association of Tuscaloosa, Allen & Jemison Company, and the United States be determined, adjusted, and adjudicated.

"It shall be the duty of every person entitled to such lien to file in the office of the judge of probate of the county in which the property upon which the lien is sought to be established is situated, a statement in writing, verified by the oath of the person claiming the lien, or of some other person having knowledge of the facts, containing the amount of the demand secured by the lien, after all just credits have been given, a description of the property on which the lien is claimed in such a manner that same may be located or identified, a description by house number, name of street, and name of city, town or village being a sufficient description where the property is located in a city, town or village, and the name of the owner or proprietor thereof; but no error in the amount of the demand or in the name of the owner or proprietor, shall affect the lien. Unless such statement is so filed the lien shall be lost. * * *"

Section 42, Title 33, Code of Alabama of 1940 provides:

"The lien declared in this article shall be deemed lost unless the statement referred to in the preceding section shall be filed by every original contractor within six months * * * and any suit for the enforcement thereof must be commenced within six months after the maturity of the entire indebtedness secured thereby * * *."

This amendment was allowed; process was issued; and the impleaded respondents duly entered an appearance. Thereafter, the suit was removed to the United States District Court for the Northern District of Alabama on petition of the United States and a trial was had upon the pleadings, evidence, and an agreed written stipulation of facts. The District Court made fact findings and concluded that the mortgage of the First Federal Savings and Loan Association of Tuscaloosa was superior to the materialman's liens and the alleged tax lien of the United States, which is not disputed here. Further, and what is important on this appeal, the court concluded that under the law of Alabama, the plaintiff, Albert Holman Lumber Company, and the defendant, Allen & Jemison Company each had perfected its materialman's lien prior to the time that the federal tax lien was recorded and that each have a specific and perfected materialman's lien that is superior to the Federal tax lien claimed by the United States. Judgment was accordingly entered in favor of Holman Company and Jemison Company and against Christine Price as administratrix of the deceased's estate for the specified amounts due on their respective liens and a sale of the property was ordered, and the United States Marshal was directed to deposit the proceeds with the Clerk for disposition in accordance with the further orders of the court. From this judgment the United States has appealed and the defendant below, Allen & Jemison Company, now appears as co-appellee with the plaintiff, Albert Holman Lumber Company.

■ The tax lien asserted by the United States stems from 53 Stat. 448, 449, 26 U.S.C. (1946 ed.) §§ 3670, 3671, 3672. Section 3670 provides: "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, penalty, additional amount, or addition to such tax, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." Section 3671 provides that unless some other date is specified by law the lien

arises when the assessment lists are received by the collector, which effective date is here conceded to be April 12, 1951. Section 3672 provides that the lien shall not be valid against mortgagees, pledgees, purchasers or judgment creditors, until notice thereof has been filed in the office provided by the law of the state for such filing—in this case, the office of the judge of probate of Tuscaloosa County. The appellees do not claim to be within the classes of persons specified in § 3672, and, accordingly, that section is not material to our present inquiry. The question here is whether at the time the Government's lien arose appellees' materialmen's liens possessed "the characteristics of a specific perfected lien which alone bars the priority of the United States." See United States v. Knott, 298 U.S. 544, 56 S.Ct. 902, 905, 80 L.Ed. 1321. The issue thus concerns the effect of a lien in relation to a provision of federal law for the collection of debts owing the United States, which has always been considered a federal question. Hence the Supreme Court has consistently held that while a state court's characterization of a lien as specific and perfected is entitled to weight, it is subject to reexamination by the federal courts. On the other hand, if the state court itself describes the lien as inchoate, this classification is "practically conclusive." People of State of Illinois v. Campbell, 329 U.S. 362, 371, 67 S.Ct. 340, 91 L.Ed. 348.

In this case the United States first argues that under the law of Alabama the liens of the appellees were inchoate and that therefore we may reverse the judgment on this basis. More specifically it argues that no complete and specific liens attach to the property under the state law until judgment is entered establishing the liens. Restating the same argument in different words, the Government asserts that until the court or the jury finds the existence of a materialman's lien, no right against or interest in the property has been established. We do not at all agree.

■■ Under the law of Alabama, as expressed by statute and the decisions of its highest court, the liens of mechanics and materialmen attach from the commence-

ment of the building or improvement and are expressly conferred on the land and on buildings and improvements to the extent in ownership of all the right, title, and interest therein of the owner or proprietor. LaVergne v. Evans Bros. Const. Co., 166 Ala. 289, 52 So. 318; Welch v. Porter & Co., 63 Ala. 225. Such liens are subject, however, to be defeated and lost if the claims are not verified and filed with the judge of probate according to the statute. There can be no question but that these steps were properly taken as the United States concedes that at the time its lien arose appellees already had filed timely notices of lien in conformity with the laws of Alabama. After verification and filing their liens were complete and, in favor of the furnishers of materials, dated from the commencement of the work. Until verified and filed according to the statute, such liens were inchoate and defeasible. Benson Hardware Co. v. Jones, 223 Ala. 287, 135 So. 441; Jackson v. Farley, 212 Ala. 594, 103 So. 882; Welch v. Porter & Co., supra; Gray v. McKinley, 34 Ala.App. 630, 43 So.2d 421. Appellant, citing Sturdavant v. First Ave. Coal & Lumber Co., 219 Ala. 303, 122 So. 178, contends that the lien remains inchoate and is not perfected until a judgment is obtained. This case, however, is clearly distinguishable on its facts and we may not assume in the light of the court's language that "the instant case is within the reason and principles of * * * Jackson v. Farley, supra", that the court intended to overturn previous decisions which it cited approvingly and which pertain to cases where suits were brought to enforce the perfected lien. The cases to which the court referred were Jackson v. Farley, supra; Grimsley v. First Ave. Coal & Lumber Co., 217 Ala. 159, 115 So. 90; Seibs v. Engelhardt, 78 Ala. 508. On this phase of the question the appellees must prevail.

This brings us to the second phase of the controversy, whether the liens were specific and perfected under federal law. In the most recent case, United States v. Gilbert Associates, 345 U.S. 361, 73 S.Ct. 701, the general lien held by the Government under 26 U.S.C. (1946 ed.) § 3670 was claimed as of August 6, 1943, prior to which date there had arisen certain "general, unperfected" liens claimed by the Town of Walpole, New Hampshire. The court in speaking of the priority rights of the respective general lien claimants said that "Without more, priority would depend upon the dates the liens *arose*." (Emphasis supplied.) In that case, since the taxpayer was insolvent, the United States claimed the benefit of another statute to give it priority, § 3466 of the Revised Statutes, 31 U.S.C.A. (1946 ed.) § 191, the pertinent provisions of which are set forth in the margin.[2] But here the Government does not claim that it is entitled to priority under § 3466, which statute the Government is content to refer to as a kindred matter, and we think that whether or not appellees' liens were specific and perfected rather than "general" the claim of federal priority is not made out. But meeting the appellant on its own ground, we do not think that the analagous authorities which it cites and to which we shall presently refer would support a holding that the liens were not perfected under federal law.

In People of State of Illinois v. Campbell, supra [329 U.S. 362, 69 S.Ct. 347], the Supreme Court reviewed a number of its prior decisions under § 3466 and held that under the long-established rule there were three essentials which were crucial to determine whether the lien was specific and perfected, and these are: "(1) the identity of the lienor, * * * (2) the amount of the lien, * * * and (3) the property to which it attaches * * *." It was held that the lien was not specific as to the property at the crucial time because it had not been definitely ascertained what property of the debtor was devoted to and used in his business and such property had not severed itself from the general and free assets of the owner, from which the claims of the United States were entitled to

2. R.S. § 3466. "Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied * * *."

priority. We think the present case comes within the established rule. Here, the identity of the lienors was made certain, before the Government's priority attached, both by the statute and by the notices of lien. The latter also fixed the amount of the liens. Furthermore, the notices of lien made definite and certain the property and segregated it from the debtor's general estate. We therefore feel justified in acting on the assumption that the Supreme Court would hold that the priority set up in § 3466, supra, would not divest a specific and perfected materialman's lien, attached to specific property, whether accompanied by possession, or not. Cf. Conard v. Atlantic Insurance Company, 1 Pet. 386, 26 U.S. 386, 441–442, 7 L.Ed. 189. To hold otherwise would be violative of the principle of unjust enrichment, giving the United States the enhancement of the value of the property which resulted from the materials supplied by appellees. In re Taylorcraft Aviation Corporation, 6 Cir., 168 F.2d 808.

The judgment was right. It is

Affirmed.