**UNITED STATES of America**

**v.**

**J. D. DuPRIEST, d/b/a DuPriest Oil Company; and Edna C. DuPriest,**

**Herman W. Fields, d/b/a Herman Fields Pump & Supply Company; and Eugene J. Green, Intervenors.**

**Civ. A. No. 13962.**

United States District Court
W. D. Louisiana,
Shreveport Division.

Oct. 28, 1969.

Donald E. Walter, U. S. Atty., and Leven H. Harris, Asst. U. S. Atty., for the Government.

James M. Barton, John M. Shuey Shuey, Smith & Carlton, Shreveport, La., for intervenors.

BEN C. DAWKINS, Jr., Chief Judge.

## OPINION

The United States invoked the original jurisdiction [1] of this Court to recover money loaned to defendants by its agent, the Small Business Administration (SBA). By this suit, plaintiff caused to be sold properties described in certain mortgages executed by defendants to secure loans received from SBA. Fields and Green intervened asserting privileges superior in rank to the Government's mortgages, thereby claiming the right to be paid from the proceeds of the Marshal's sale in preference to the United States.

Tersely stated, the facts here are as follows:

1. Defendants acquired certain oil and gas leases in Louisiana on June 3, 1964.

2. Fields and Trans-States Petroleum (which assigned its rights herein to Green) variously furnished supplies, material, labor, services and repairs to DuPriest on the leases from the summer of 1964 until November, 1966.

1. 28 U.S.C. § 1345.

3. On June 29, 1965, and on January 3, 1966, defendants executed and delivered to SBA mortgages covering certain movable and immovable property (including the oil and gas leases mentioned above) to secure the loans made to it by SBA.

4. When defendants failed to pay fully for services and material provided by intervenors, the latter secured judgments in a Louisiana Court recognizing their claims against defendants and caused the property in this suit to be seized constructively pursuant to Louisiana law.[2] These judgments and constructive seizures became final in the spring of 1968.

5. On July 25, 1968, the United States brought this proceeding to recover the money loaned by SBA and caused the mortgaged property to be seized and sold at a U. S. Marshal's sale.

The foregoing facts, in more detail, were stipulated by counsel for the Government and intervenors. Defendants left the jurisdiction of this Court before this action was begun and made no appearance in this suit.

There being no factual dispute, our task is to decide whether the Government or intervenors have a preference to the proceeds of the Marshal's sale.

▪ The Government concedes that if this case were controlled solely by Louisiana law intervenors would prevail. This is because the Louisiana oil, gas, and water well lien statute[3] provides that one providing goods, services, etc., in connection with the drilling of any well has a privilege on all of the respective aspects of that well. Once filed and perfected, this lien is superior to other privileges and mortgages and is effective from the date on which the first labor, services, etc., were performed. Thus, since intervenors provided, and continued to provide, their goods and services before the mortgages on the af-

fected property were granted by defendants to SBA, under Louisiana law intervenors would prevail, their privileges having been timely filed and perfected. Nonetheless, the Government contends that this case is governed by federal law:

"The effect and operation of a lien in relation to the claim of priority by the United States under Rev.Stat. § 3466 is always a federal question. 'The priority given the United States cannot be impaired or superseded by state law.' United States v. Oklahoma, 261 U.S. 253, 260, 43 S.Ct. 295, 67 L.Ed. 638. Hence a state court's characterization of a lien as specific and perfected is not conclusive. United States v. Waddill, Holland & Flinn, 323 U.S. 353, 357, 65 S.Ct. 304, 89 L. Ed. 294. The state characterization, though entitled to weight, is always subject to reexamination by this Court." Illinois ex rel. Gordon v. Campbell, 329 U.S. 362, 371, 67 S.Ct. 340, 345, 91 L.Ed. 348 (1946).

Consequently, it asserts priority to the proceeds here by virtue of the following statute:

"Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed. R.S. 3466." 31 U.S.C. § 191.

▪▪ It is well settled that the statute does not *create* a lien. Bramwell v.

2. La.R.S. 13:3851 *et seq.*, provide for constructive seizure of immovable property in lieu of actual physical seizure.

3. La.R.S. 9:4861 *et seq.*

United States Fidelity & Guaranty Co., 269 U.S. 483, 46 S.Ct. 176, 70 L.Ed. 368 (1925). It merely establishes a priority in favor of the Government when it competes with other creditors for sums owed to them by certain debtors. By their stipulations, the parties agreed that defendants come within the class of debtors defined in the statute. This follows because they were insolvent and committed an act of bankruptcy [4] by allowing their property to be sequestered by process of law and by failing to discharge that lien within thirty days from the date thereof.

Thus the sole issue before us is whether the federal statute requires the United States to be paid ahead of intervenors.

31 U.S.C. § 191 has been the subject of much litigation and many doctrinal works. A comprehensive review of cases concerned with competing claims between creditors under state lien laws and the United States is found in United States v. Menier Hardware No. 1, Inc., 219 F.Supp. 448 (W.D.Tex.1963); see also Annots. at 36 A.L.R.2d 1203, 94 A. L.R.2d 748, and 42 Am.Jur.2d, "Insolvency," Sec. 86, *et seq.* Regrettably, neither that case nor any authority or precedent we have found is precisely dispositive of the issue here. The only case cited and relied on by the Government, W. T. Jones & Co. v. Foodco Realty, Inc., 318 F.2d 881 (4th Cir.1963), is inapposite because there the insolvent debtor had not been divested of title *or* possession. Here the debtors had been divested of *possession* of the property in question. (See 318 F.2d at 887, and authorities there cited.)

■ While the statute does not create a lien, it is settled that a claim of the United States within the scope of the statute will prevail against a State-created pre-existing inchoate lien on the debtor's property. United States v.

Knott, 298 U.S. 544, 56 S.Ct. 902, 80 L. Ed. 1321 (1935). Thus, had intervenors not reduced their claim to judgment, and subsequent constructive possession, clearly the Government would prevail here.

■ What then is the effect of the State judgments secured by intervenors against defendants and subsequent constructive seizure of the property involved? Thus far, the Supreme Court has declined to decide that issue. In United States v. Gilbert Associates, 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071 (1952), the Court said:

> "As is usual in cases like this, the Town asserts that its lien is a perfected and specific lien which is impliedly excepted from the statute. This Court has never actually held that there is such an exception. Once again, we find it unnecessary to meet this issue because the lien asserted here does not raise the question."

See also Illinois ex rel. Gordon v. Campbell, *supra,* and cases cited therein.

As noted, whether intervenors' claim was specific and choate is controlled by the federal standards re-emphasized in Illinois ex rel. Gordon v. Campbell, *supra:*

1. The identity of the lienor,
2. The amount of the lien,
3. The property to which it attaches.

Using those guidelines, we determine that intervenors' claims were specific and choate at the time application of § 191 took place. We say this because the act of bankruptcy, bringing the statute into force, took place thirty days after the Sheriff of Caddo Parish constructively seized defendants' property. Had defendants discharged the seizure within thirty days, no act of bankruptcy would have occurred and 31 U.S.C. § 191 would

---

4. 11 U.S.C. § 21 defines an act of bankruptcy, in part, as follows: "Acts of bankruptcy by a person shall consist of his having * * * suffered or permitted, while insolvent, any creditors to obtain a lien upon any of his property through legal proceedings or distraint and not having vacated or discharged such liens within thirty (30) days from the date thereof * * *."

not have entered into the picture at that time.

We hold, therefore, that intervenors have established an exception to the broad preferential status given to the Government in cases dealing with insolvent debtors and competing creditors, including the United States. Had intervenors caused a sale of the subject property to be made by the Louisiana Sheriff, and had the United States not intervened to assert its claim, clearly the Government then could not have seriously contended that it had a preferential right to the money in the hands of intervenors. That would give the statute a scope far more sweeping than we think Congress intended. Yet if we were to allow the Government to prevail here, our holding would not be too far removed from the hypothetical situation just posed.

■ In sum, while we find that 31 U.S.C. § 191 does give the Government a preferential status in keeping with congressional intent, when it properly must be applied, we find that the facts here are not such as to bring the Government's claim within the purview of § 191 since intervenors effectively had dispossessed the debtors of their property before the statute became applicable.

■ In the record is the *proces verbal* of the Marshal's sale, which shows that SBA bid $22,000 for the property, being two-thirds of its appraised value, but the bid amount was not paid in cash and was applied against the total indebtedness due to SBA by the defendants. Consequently, there are no funds on hand in the registry of the Court from which intervenors' claims might be paid. Therefore, one of the two following actions must be taken to satisfy intervenors' prior choate liens and privileges:

1. SBA must pay intervenors the full amount of their liquidated claims; or,

2. The property adjudicated to SBA by the Marshal at the sale will remain subject to the prior total indebtedness due to intervenors who may take whatever legal action may be appropriate with respect to their liens in order to obtain payment of their claims.

An appropriate judgment should be presented.