**UNITED STATES of America,**
**Plaintiff,**

v.

**T. H. WILLIAMS, Alice M. Williams, Individually and as Partners Trading as Williams Motor Company; State of North Carolina, The Northwestern Bank of Wilkes County, S. V. Tomlinson, R. L. Woodies, Ward Kenerly, Mildred Kenerly and G. W. Badgett, Defendants.**

**Civ. A. No. 186.**

United States District Court
M. D. North Carolina,
Wilkesboro Division.

March 6, 1956.

H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe, Carrington Williams, Special Assts. to Atty. Gen., Edwin M. Stanley, U. S. Atty., Greensboro, N. C., for plaintiff.

Trivette, Holshouser & Mitchell, North Wilkesboro, N. C., for State of North Carolina.

Whicker & Whicker, North Wilkesboro, N. C., Woltz & Barber, Mt. Airy, N. C., for defendants other than State of North Carolina.

WARLICK, District Judge.

This is an action in which plaintiff seeks a recovery for income taxes, penalties, and interest, allegedly owed by T. H. Williams individually for the years 1944 through 1947, in the sum of $14,859.94, and against Alice M. Williams, his wife, in the sum of $15,544.29 for the same years, and against both T. H. Williams and Alice M. Williams, jointly for the sum of $1,276.55, due for the year 1943, and for federal unemployment taxes additionally due by the Williams Motor Company, a partnership, composed of T. H. Williams and Alice M. Williams for the years 1951 and 1952, in the sum of $659.94. The taxpayers do not contest their tax liability to the plaintiff and the cause is to be determined and the

answer found from the claims filed, their priority and validity in and to a certain sum of money, a surplus from a trustee's sale of the property of the taxpayers.

In 1945 and again in 1947 T. H. Williams and wife, Alice M. Williams, sole partners in the Williams Motor Company, executed two certain deeds of trust conveying all of their real and personal property other than some household and kitchen furniture of small value, to certain trustees named in the instrument, to secure a certain indebtedness of $32,-000, then due to the Northwestern Bank, a North Carolina banking institution, and one of the defendants herein. These deeds of trust were properly placed to record in the public registry of Wilkes County, North Carolina, where the lands were situate and where the personal property was located. Both deeds of trust were prior in time and recordation to any alleged lien herein considered.

On December 3, 1947, the State of North Carolina recorded two certificates of income tax liability; one for $1,997.-26 against Alice M. Williams, representing income tax, penalties and interest for the years 1943 to 1946, inclusive, and another for $1,690 against T. H. Williams for the same years, 1943 to 1946, inclusive, with the Clerk of the Superior Court of Wilkes County, and again on November 2, 1950, an additional sales tax liability against Williams and wife for $4,324.82 was filed by the State. This amount being for sales tax from October 1, 1947 to September 30, 1950.

On May 10, 1950 Williams and wife executed and delivered to S. V. Tomlinson an additional deed of trust in the sum of $507.74, on certain of the real estate which was embraced in the prior deeds of trust to the Northwestern Bank. This deed of trust was properly filed and recorded.

On July 19, 1952, a judgment for $2,-000 was docketed against T. H. Williams and wife by G. W. Badgett, in the office of the Clerk of the Superior Court of Wilkes County.

That on or before November 19, 1952, and on succeeding dates thereafter during 1953, certain assessments were levied for taxes due plaintiff by defendants Williams and wife. Notice of these liens were forwarded and were duly recorded in the office of the Register of Deeds for Wilkes County, being placed to record for that Williams and wife had failed to pay on proper demand being made.

During July 1953 all and every of the personal property used by Williams and wife in the operation of the Williams Motor Company was levied upon by the Sheriff of Wilkes County under a legally issued process by the Clerk of the Superior Court under a judgment docketed against them, and on being exposed to public sale was sold and delivered to the high bidder, the defendant, Mildred Kenerly.

In February 1954 the two deeds of trust executed by Williams and wife to the Northwestern Bank were foreclosed and all of their property with the exception of the household and kitchen furniture, was sold and delivered to the purchasers thereof. Resulting from such foreclosure sale and after payment of all costs and the other expenses, the trustee for the Northwestern Bank held a surplus of $6,625.33 and being unable to determine to whom this surplus belonged, paid it to the Clerk of the Superior Court of Wilkes County. The State of North Carolina then brought a Special Proceeding under General Statutes, Sec. 45–21.32 of North Carolina, to have it legally determined which of the creditors holding the recorded liens were entitled to the remaining assets. The United States was not a party to this proceeding, and though it offered suggestions on the receipt of a letter from the Trustee, it took no part therein and was not bound thereby. In said hearing the Clerk of the Superior Court ordered that the sum of $677.61 be paid to the defendant Tomlinson in view of the unpaid amount under that deed of trust. That the remainder of said fund in the sum of $5,940.58 be paid to the State of North Carolina, on its tax claims.

Thereafter on August 17, 1954, this action was instituted and though it originally sought a lien foreclosure action, on being advised that the property had actually been sold, plaintiff moved to amend its complaint so that the liens of the plaintiff could be transferred to the proceeds thereof and if such proceeds had been distributed, that such defendant receiving said surplus be decreed a holder of said funds in trust. This motion was granted.

R. L. Woodies, a defendant, made no appearance, either personally or through counsel.

The State of North Carolina filed its tax certificates as is provided for in General Statutes of North Carolina, Sec. 105–242, subsec. (3).

The plaintiff filed its tax liability claim under 26 U.S.C.A. § 3672 of the Internal Revenue Code.

For quite a number of years the Commissioner of Revenue for North Carolina, acting pursuant to General Statutes, Sec. 105–417.1, had entered into agreements with the plaintiff for the purpose of co-ordinating the administration and collection of taxes imposed by the plaintiff and by the defendant, State of North Carolina, and in consequence of said agreement had notified the plaintiff of the tax deficiency of Williams and wife, and such information resulted in the tax liability certificates being filed by the plaintiff herein. Very often plaintiff reciprocated and accordingly gave the Revenue Department of North Carolina information of a like nature.

The plaintiff contends it is entitled to recover the amount which was paid to the State of North Carolina under the judgment of the Clerk of Court of Wilkes County. That its claim amounts to $32,-340.72, plus interest and penalties. That its liens filed are valid. The defendants, Williams and wife were insolvent at the time of the matters herein found, and that in addition thereto each committed an act of bankruptcy. That the tax liens of the defendant, the State of North Carolina, though prior in time of recor-dation, were not specific and did not con-stitute the State a judgment creditor un-der 26 U.S.C.A. § 3672. That Section 3466 of the Revised Statutes, 31 U.S.C.A. § 191 gives priority to its claim over the recorded tax liabilities due the State of North Carolina.

North Carolina contends that its tax certificates were filed and recorded prior in time to the tax liens of plaintiff; That under the North Carolina law these tax certificates being filed with the Clerk of the Superior Court and cross indexed, became judgments of the Superior Court and rose to the dignity of a specific lien on all property owned by Williams and wife and that such lien was plenary to the extent that it fulfilled every requirement of a judgment creditor and that full faith and credit be accorded such record.

And further, but for its giving information under the agreement theretofore had, plaintiff likely would never have learned of the financial status of Williams and wife and would not have filed its tax certificate lien. That the taxpayers were not insolvent and had not committed an act of bankruptcy; That Sec. 3466 of the Revised Statutes does not apply; and that it should be permitted to retain that which it now holds under the judgment of the Clerk of the Superior Court of Wilkes County, in partial satisfaction of the tax deficiency of taxpayers; and that finally it should not be decreed a trustee of said fund for the use and benefit of plaintiff.

It was stipulated by counsel that the taxpayers had no property after the sales were had and the payments made, other than a small amount of household and kitchen furniture, and that the appraised value thereof was less than the North Carolina constitutional exemptions on personal property; that the taxpayers' liabilities exceeded their assets. That the two deeds of trust to the Northwestern Bank were valid and the sales held thereunder conveyed a good and indefeasible title; that the surplus of $6,625.33 was correct; that the sale

of the personal property under the execution in the hands of the Sheriff was regular and valid. That the docketed judgment of Badgett is in all respects a valid and proper lien.

It is further stipulated:

"That the only issue to be determined by the court in this action is to determine what party is entitled to the surplus funds from the previous foreclosure sale, now held by the State of North Carolina."

I find at the time of the sales herein that the liability of the taxpayers exceeded their assets by more than $40,-000.

## Conclusions of Law.

This case would present little if any difficulty, but for Sec. 3466 of the Rev.Stat., 31 U.S.C.A. § 191, which plaintiff contends applies; for otherwise the lien of the defendant, the State of North Carolina being docketed prior in point of time to that of plaintiff, would stand first for payment under the interpretations which place liens of the federal government and liens of the State on an equal basis for the application of the principle, *first in time, first in right*. Rankin v. Scott 12 Wheat. 177, 179, 6 L.Ed. 592; United States v. City of Greenville, 4 Cir., 118 F.2d 963.

I am of the opinion that Sec. 3466 applies to the facts in this case,—for that in order to give the priority specified in Sec. 3466 there must be a case of an insolvent debtor—* * * or a case in which an act of bankruptcy is committed. Sec. 3466 provides:

"*Whenever any person indebted to the United States is insolvent*, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority hereby established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, *as to cases in which an act of bankruptcy is committed*."

The claim of the United States to the asserted priority rests exclusively upon the statute. No lien is created by it. It does not overreach or supercede any bona fide transfer of property in the ordinary course of business. It established priority which is limited to the particular state of things specified. United States v. State of Oklahoma, 261 U.S. 253, 43 S.Ct. 295, 67 L.Ed. 638.

Section 3, subsection a(3) of the Bankruptcy Act is as follows:

"(3) suffered or permitted, while insolvent, any creditor to obtain a lien upon any of his property through legal proceedings or distraint and not having vacated or discharged such lien within thirty days from the date thereof or at least five days before the date set for any sale or other disposition of such property". Title 11 U.S.C.A. Chap. 3, § 21.

The word "insolvent" is used in many different senses. Sec. 3466 makes it apply to cases of an insolvent debtor,— "not having sufficient property to pay all his debts, * * *" who has committed an act of bankruptcy.

"A person shall be deemed insolvent within the provisions of this act whenever the aggregate of his property, exclusive of any property which he may have conveyed, transferred, concealed, or removed, or permitted to be concealed or removed, with intent to defraud, hinder, or delay his creditors, shall not, at a fair valuation, be sufficient in amount to pay his debts", 11 U.S. C.A. § 1(19), and,

"Independent of statute, it may generally be said that insolvency, when applied to a person, firm, or corporation engaged in trade, means inability to pay debts as they become due in the usual course of busi-

ness. The definition is one generally accepted by both the state and federal courts." Oklahoma Moline Plow Co. v. Smith, 41 Okl. 498, 503, 139 P. 285, 287; United States v. State of Oklahoma, 261 U.S. 253, 43 S.Ct. 295, 67 L.Ed. 638; United States v. State of Texas, 314 U.S. 480, 62 S.Ct. 350, 86 L.Ed. 356.

I therefore reach the conclusion that Williams and wife, the taxpayers, were hopelessly insolvent and that while in that condition suffered or permitted a creditor to obtain a lien upon their property by a docketed judgment and thereby committed an act of bankruptcy.

Taking up the words of Sec. 3466 we find they "are broad and sweeping and, on their face, admit of no exception to the priority of claims of the United States. Thelusson v. Smith, 2 Wheat. 396, 425, 4 L.Ed. 271; United States v. [State of] Texas, supra, 314 U.S. at page 484, 62 S.Ct. at page 352, 86 L.Ed. 356. But this Court in the past has recognized that certain exceptions could be read into this statute. The question has not been expressly decided, however, as to whether the priority of the United States might be defeated by a specific and perfected lien upon the property at the time of the insolvency or voluntary assignment." United States v. Waddill, Holland & Flinn, Inc., 323 U.S. 353, 65 S.Ct. 304, 306, 89 L.Ed. 294.

Though the point has been raised in a large number of cases through the hundred years or more that this statute has been a part of our law, the Supreme Court has consistently failed to write into the decisions the answers to that question. As late as the decision of United States v. Gilbert Associates, Inc., 345 U.S. 361, 73 S.Ct. 701, 704, 97 L.Ed. 1071, decided April 6, 1953, this doctrine has been adhered to, for there it is held:

"In claims of this type 'specificity' requires that the lien be attached to certain property by reducing it to possession, on the theory that the United States has no claim against property no longer in the possession

of the debtor. Thelusson v. Smith, 2 Wheat. 396, 4 L.Ed. 271. Until such possession, it remains a general lien."

I conclude that the tax lien filed by the State of North Carolina under Section 105–242, subsec. (3), of the General Statutes is no more than a general lien, and when it and the lien of the federal government, both being general, and the taxpayer being insolvent, that Sec. 3466 clearly awards priority for payment to the United States.

I therefore hold that the plaintiff is entitled to prevail and that it should have and receive that sum heretofore paid to the State of North Carolina by the judgment of the Clerk of the Superior Court of Wilkes County.

Counsel will present decree.