**Marie D. NESBITT, Plaintiff,**

v.

**UNITED STATES of America, Safeco Title Insurance Company, a California Corporation, the City and County of San Francisco, L. T. Goldmeyer dba Union Credit Company, and the Franchise Tax Board, an agency of the State of California, Defendants.**

**No. C–77–1126–CBR.**

United States District Court,
N. D. California.

Feb. 1, 1978.

Daniel J. Parks, Pico & Parks, San Mateo, Cal., for plaintiff.

G. William Hunter, U. S. Atty., John M. Youngquist, Asst. U. S. Atty., San Francisco, Cal., for defendant United States of America.

Thomas E. Alborg, San Francisco, Cal., Safeco Title Insurance Co., for defendant Safeco Title Insurance Co.

Thomas M. O'Connor, City Atty., Virginia J. Lum, Deputy City Atty., San Francisco, Cal., for defendant City and County of San Francisco.

## MEMORANDUM OF OPINION

RENFREW, District Judge.

This is an action instituted by plaintiff seeking a determination that her claim to certain proceeds from the sale of real property has priority over any claims of the United States to such proceeds. The United States has filed a cross-claim seeking a determination that it is entitled to first priority payment from the same sales proceeds. Both parties have moved for summary judgment on their respective claims. Arguments on the motions were heard on November 10, 1977. Having carefully considered the arguments of counsel and the legal memoranda, affidavits, and exhibits filed in support of and in opposition to the motions, the Court concludes that there is no genuine issue as to any material fact and that the United States is entitled to summary judgment in its favor as a matter of law.

## I. FACTUAL BACKGROUND

The complaint, originally filed on May 26, 1977, and amended by stipulation on August 8, 1977, named as defendants the United States, the City and County of San Francisco (the "City"), L. T. Goldmeyer d.b.a. Union Credit Company ("Union Credit"), the Franchise Tax Board of the State of California ("Franchise Tax Board"), and Safeco Title Insurance Company ("Safeco"). Plaintiff and each defendant except Safeco are claimants to the proceeds from the sale of certain real property (the "Capp Street property") in which one Franklyn K. Brann

("Brann"), together with his wife, owned an undivided 13 per cent interest.

Plaintiff and the claimant-defendants are creditors of Brann. Plaintiff holds a judgment against Brann for $225,061,[1] an abstract of which was recorded on April 28, 1976. The United States has assessed certain internal revenue tax liabilities totalling $89,160.06 against Brann.[2] Notices of tax liens were recorded on September 7, 1976, for $436.77; on January 17, 1976, for $50,674.29; and on January 25, 1977, for $4,761.66. Union Credit holds a judgment against Brann for $267.57, an abstract of which was recorded on April 16, 1975. The City has assessed certain personal property tax liabilities totalling $772.56 against Brann and recorded a certificate of delinquency of such taxes on July 28, 1975. The City also holds a judgment against Brann in the amount of $280.10, an abstract of which was recorded on August 1, 1975. The Franchise Tax Board holds two tax liens against Brann, one of which was recorded on May 27, 1976, in the amount of $5,489.36, the other recorded on June 7, 1976, in the amount of $704.77.[3]

On May 26, 1976, Brann died and the Capp Street property passed to his estate. Since the estate did not have assets of sufficient value to pay and satisfy all valid claims of indebtedness against it, a dispute arose as to who should be first paid from the proceeds from the sale of the Capp Street property. So that the property could be sold, plaintiff, the United States, Union Credit, and the City entered into an agreement whereby the property was to be sold pursuant to 26 U.S.C. § 6325(b)(3),[4] with all claims to attach to the sales proceeds. Safeco now holds the sum of $39,839.51, which are the net proceeds of sale allocable to Brann's interest in the Capp Street property.

The question presented, simply stated, is who has priority to payment from these sales proceeds. The parties agree that, but for the insolvency of Brann's estate, the judgment lien claim of plaintiff against Brann, being perfected under state law prior or in time to the United States tax liens, would, under the provisions of 26 U.S.C. § 6321 et seq., be entitled to satisfaction from these proceeds prior to any tax lien claim of the federal government. The United States contends, however, that because Brann's estate is insolvent, its claims are entitled to priority under the provisions of Revised Statutes § 3466, 31 U.S.C. § 191.

## II. APPLICABILITY OF § 3466

Section 3466 of Revised Statutes provides:

"Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his

---

1. Plaintiff's judgment against Brann was entered upon the latter's default in a malpractice action. The complaint in that action charged Brann with responsibility for a default entered against plaintiff in a 1971 divorce proceeding in which Brann had represented plaintiff.

2. In its cross-claim, the United States alleged that Brann was indebted to it in the sum of $54,167.54. In a declaration submitted by the United States, counsel stated the amount of indebtedness to be $89,160.06, and exhibits were submitted supporting this figure. Since only $39,839.51 is available to satisfy the parties' claims, the Court need not resolve the conflict between the figure alleged in the cross-claim and the figure set forth in the declaration.

3. The Capp Street property was also subject to six other claims, all of which were released upon full payment to the various claimants.

4. Section 6325(b)(3) provides:

"Subject to such regulations as the Secretary or his delegate may prescribe, the Secretary or his delegate may issue a certificate of discharge of any part of the property subject to the lien if such part of the property is sold and, pursuant to an agreement with the Secretary or his delegate, the proceeds of such sale are to be held, as a fund subject to the liens and claims of the United States, in the same manner and with the same priority as such liens and claims had with respect to the discharged property."

debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."[5]

 It is not disputed that § 3466 applies here. There is an estate which is insufficient to pay all the debts due from the deceased,[6] and there are debts due to the United States from the estate. Taxes due the United States have long been recognized as debts for purposes of § 3466. *See Price v. United States*, 269 U.S. 492, 499, 46 S.Ct. 180, 70 L.Ed. 373 (1926). There is, therefore, no question that the claim asserted here by the United States is within the purview of § 3466.

### III. *CLAIMED EXCEPTIONS TO § 3466*

Having decided as a preliminary matter the applicability of § 3466, the Court now addresses plaintiff's arguments that the United States does not have priority under that section over her judgment lien since (1) the Federal Tax Lien Act of 1966 (the "FTLA"), and in particular 26 U.S.C. § 6323(a), created an exception to § 3466 which excepts her lien from the operation of § 3466, and (2) her lien is perfected and

specific and therefore excepted from the operation of § 3466.[7]

#### A. *Internal Revenue Code § 6323(a)*

Section 6321 creates a lien in favor of the United States for the amount of tax, together with incidentals, that anyone has neglected to pay, upon "all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321.[8] Section 6323(a), however, provides in relevant part:

> "The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary or his delegate." 26 U.S.C. § 6323(a).

Since plaintiff is a judgment lien creditor, and since notice of the federal government's tax liens was not filed before plaintiff recorded her judgment lien, the United States tax liens are not valid against plaintiff's lien under the provisions of the FTLA. Plaintiff argues that this also means that the United States is not entitled to priority under § 3466 since the FTLA, and in particular 26 U.S.C. § 6323(a), overrides § 3466 where the debts due to the United States are for taxes due. Specifically, plaintiff

---

5. Section 3466 has been in substantially its present form since the Act of March 3, 1797, ch. 20, § 5, 1 Stat. 515.

6. In a declaration submitted by the United States, Rudolph Nothenberg, the executor of Brann's estate, stated that the "estate is without assets of value sufficient to pay and satisfy all valid claims of indebtedness against it and that said estate is accordingly insolvent." Plaintiff has not disputed this statement, and the Court accepts it for purposes of the within motions.

 Plaintiff does argue, however, that even though the estate is insolvent, § 3466 is not applicable since (1) the vast bulk of tax liens here involved were recorded against both Brann and his wife, and there is no evidence that Mrs. Brann is insolvent, and (2) there are other resources from which the federal government could satisfy its claims, *e. g.*, certain other real property which was the home of Brann and his wife. Plaintiff has submitted no factual support for the second contention. As for the first contention, even assuming that Mrs.

Brann is a joint debtor and that she is solvent, the application of § 3466 does not depend on whether there is a solvent joint debtor to which the United States can look for satisfaction of its debts. The United States has a right to look to Brann's estate for full satisfaction and, if the estate is insolvent, the United States is entitled to priority under § 3466.

7. Plaintiff also contends that she should prevail over the federal government because Brann had no remaining property rights in the proceeds of sale to which the federal lien could attach since plaintiff's judgment lien exceeded the proceeds of sale. This contention is patently without merit. The existence of a judgment lien does not deprive the judgment debtor of his rights to property subject to the lien.

8. Section 6321 was not amended by the FTLA, but for purposes of convenience the Court will refer to § 6321 and all other relevant sections dealing with federal tax liens as the FTLA.

argues that § 3466, a broad general priority statute, is inconsistent with the FTLA, a specific tax lien priority statute, and that the specific rule of the FTLA, which gives plaintiff's judgment lien priority over the federal government's tax lien, should therefore prevail over the general rule of § 3466.

█ The Court of Appeals for this Circuit has not yet addressed the question. Although several courts have dealt generally with this question,[9] no court appears to have fully addressed it. Because of the novelty and importance of the question, the Court sets forth below the reasons which lead it to conclude that the FTLA and § 6323(a) do not create any exception to the operation of § 3466.

The predecessor of the FTLA was the Act of July 13, 1866, ch. 184, § 9, 14 Stat. 107, which provided in part:

"And if any person, bank, association, company, or corporation, liable to pay any tax, shall neglect or refuse to pay the same after demand, the amount shall be a lien in favor of the United States from the time it was due until paid, with the interest, penalties, and costs that may accrue in addition thereto, upon all property and rights to property belonging to such person, bank, association, company, or corporation ＊ ＊ ＊." [10]

The purpose of this act, as recently stated by former Congressman Mills, then Chair-

man of the House Ways and Means Committee and sponsor of the FTLA, was to "[assist] in the collection of the revenues." Indeed, one of the purposes of the FTLA, according to Congressman Mills, was to "improv[e] the ability of the Federal tax liens to fulfill their original function." 112 Cong.Rec. 22224 (1966). There is nothing in either the language or the legislative history of the act to indicate that Congress intended to make tax liens the federal government's sole remedy for the collection of unpaid taxes. To the contrary, Congress intended tax liens to supplement existing means for the collection of taxes, including § 3466. There is, therefore, no basis for saying that Congress, by creating federal tax liens, intended to modify § 3466 in any way.

Plaintiff apparently realizes this since she cites § 6323(a) as the specific provision which overrides § 3466. Her argument is that Congress, by enacting this section to give certain classes of creditors, including judgment lien creditors, protection from federal tax liens, must have also intended to give such creditors protection from the government's priority under § 3466. Plaintiff's argument is unsupported by legislative history. The predecessor of § 6323(a) was the Act of March 4, 1913, ch. 166, 37 Stat. 1016, which gave purchasers, mortgagees, and judgment creditors protection against federal tax liens of which notice had not been filed in a duly designated

---

**9.** Several courts have held that the provisions of § 3466 are limited by the FTLA and § 6323(a), see *City of Vermillion, S. D. v. Stan Houston Equipment Co.,* 341 F.Supp. 707, 713 (D.S.D.1972); *In re Decker's Estate,* 355 Pa. 331, 49 A.2d 714 (1946), *cert. denied sub nom. Decker v. Kann,* 331 U.S. 807, 67 S.Ct. 1190, 91 L.Ed. 1828 (1947); *National Surety Corp. v. Sharpe,* 236 N.C. 35, 72 S.E.2d 109 (1952); *James Talcott, Inc. v. Roto American Corp.,* 123 N.J.Super. 183, 302 A.2d 147 (1973), and at least two circuits have used language which can only be read as expressing a belief that § 6323(a) does so limit § 3466, see *United States v. Vermont,* 317 F.2d 446, 449 & n.3 (2 Cir. 1963), *aff'd* 377 U.S. 351, 84 S.Ct. 1267, 12 L.Ed.2d 370 (1964); *Exchange Bank & Trust Co. v. Tubbs Manufacturing Co.,* 246 F.2d 141, 143 (5 Cir.), *cert. denied sub nom. City of*

*Dallas, Texas v. Tubbs Manufacturing Co., Inc.,* 355 U.S 868, 78 S.Ct. 118, 2 L.Ed.2d 75 (1957). Other courts, however, have held that § 6323(a) does not create any exception to the operation of § 3466. *See Commonwealth of Kentucky, Dept. of Rev. v. United States,* 383 F.2d 13, 15–16 (6 Cir. 1967); *Spira v. United States,* 76–2 USTC ¶ 9600 (N.D.Ill.1976); *see also James v. United States,* 366 U.S. 213, 252 n.4, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961) (Whittaker, J., concurring in part and dissenting in part); *H. B. Agsten & Sons, Inc. v. Huntington Trust & Savings Bank,* 388 F.2d 156, 161 (4 Cir. 1967) (Haynsworth, C. J., concurring), *cert. denied,* 390 U.S. 1025, 88 S.Ct. 1413, 20 L.Ed.2d 282 (1968).

**10.** This act amended the Act of March 3, 1865, ch. 78, 13 Stat. 470.

office.[11] The purpose of this act, as expressed by its author, Representative Sterling, was to "amend Section 3186 of the Revised Statutes [the existing tax lien act]" "for the protection of innocent purchasers or mortgagees or judgment creditors without notice." 49 Cong.Rec. 1802 (1913). There is nothing in the legislative history of this act to indicate that innocent purchasers, mortgagees, and judgment creditors were also to be afforded protection from the federal government's priority under § 3466, and the clear language of the statute is quite to the contrary.

Nor is there anything in the FTLA which supports plaintiff's argument. Although the FTLA was a comprehensive revision of the law of federal tax liens and priorities, it in no way affected the government's priority under § 3466. Nothing in the legislative history of the FTLA indicates any congressional intent to override § 3466. In fact, there is some evidence to the contrary. The American Bar Association ("ABA"), whose proposal ultimately led to the enactment of the FTLA, had recommended that Congress amend § 3466 to coordinate the federal priority in insolvency with the relief against the federal tax lien proposed for certain liens and security interests (i. e., the relief afforded by § 6323(a)). *Report of the Special Committee on Federal Liens,* in 84 ABA Annual Report 645, 731–736 (1959). Congress failed to act upon the ABA's proposal, however, apparently because the ABA's recommendation affected many federal claims in addition to tax claims and therefore fell outside the jurisdiction of the congressional committees that considered the ABA's proposed tax lien legislation. Plumb, "The Federal Priority in Insolvency: Proposals for Reform," 70 Mich.L.Rev. 3, 8 (1971). In 1970, the ABA proposed a revised version of its insolvency priority recommendation. *Id.* at 9–10. This proposal was considered by the Senate Judiciary Committee, but the resulting bill never passed out of committee. *See* S. 2197, 92d Cong., 1st Sess. (1971). This Court cannot lightly disregard the fact that Congress has been requested on at least two occasions to amend § 3466 in a manner which would achieve the result sought here by plaintiff, but it has not yet so amended that section.

The Court recognizes that the policies reflected in § 6323(a) appear inconsistent with affording a federal tax lien priority under § 3466 over the claims of those creditors protected by the provisions of § 6323(a). This is not, however, a sufficient basis to hold that § 3466 has been impliedly amended. The Supreme Court has, on several occasions, stated that " '[o]nly the plainest inconsistency would warrant our finding an implied exception to the operation of so clear a command as that of § 3466.' " *United States v. Moore,* 423 U.S. 77, 82–83, 96 S.Ct. 310, 314, 46 L.Ed.2d 219 (1975) (citation omitted); *United States v. Key,* 397 U.S. 322, 324–325, 90 S.Ct. 1049, 25 L.Ed.2d 340 (1970); *United States v. Emory,* 314 U.S. 423, 433, 62 S.Ct. 317, 86 L.Ed. 315 (1941). This Court does not believe that, under the standards set forth by the Supreme Court, § 6323(a) created an implied exception to the operation of § 3466.

The operation of § 3466 when a federal claim for taxes due conflicts with a claim of a purchaser, a holder of a security interest, a mechanic's lienor, or a judgment lien creditor is not plainly inconsistent with § 6323(a). Section 3466 and the FTLA are entirely separate entities. *See H. B. Agsten & Sons, Inc. v. Huntington Trust & Savings Bank,* 388 F.2d 156, 160 (4 Cir. 1967); *cert. denied,* 390 U.S. 1025, 88 S.Ct. 1413, 20 L.Ed.2d 282 (1968); *cf. United States v. Vermont,* 377 U.S. 351, 357–358, 84 S.Ct. 1267, 12 L.Ed.2d 370 (1964) (test for determining the choateness of a lien for purposes of the tax lien law is different from test for determining whether a lien is perfected and specific for purposes of § 3466). For one thing, the two statutes operate in different contexts:

> "Section 3466 of the Revised Statutes grants a first priority to the Government as a creditor; [section 6321] creates a lien

---

11. In 1939, pledgees were afforded similar protection. *See* Revenue Act of 1939, § 401, 53 Stat. 883. The FTLA amended § 6323(a) to its present form.

on 'all the property' of a delinquent taxpayer. The Section 3466 priority is not a lien; it covers all debts to the Government; it is available only in the case of an insolvent debtor whose property has passed to a third person—other than a trustee in bankruptcy—for the benefit of creditors; and it arises at the time of this transfer. The [section 6321] tax lien covers only tax debts; it arises regardless of the solvency of the taxpayer; and it attaches at the time the assessment list is received by the collector." Kennedy, "The Relative Priority of the Federal Government: The Pernicious Career of the Inchoate and General Lien," 63 Yale L.J. 905, 906 (1954) (footnotes omitted); *see also H. B. Agsten & Sons, Inc. v. Huntington Trust & Savings Bank, supra,* 388 F.2d at 160.

Moreover, the two statutes address different policies. Section 6323(a) is not a simple act of magnanimity on the part of Congress; by modifying federal tax liens to the advantage of certain competing interests, Congress may well have enhanced the government's chance of realizing taxes, owing to feeding of the lien by private credits. *See* Young, "Priority of the Federal Tax Lien," 34 U.Chi.L.Rev. 723, 725–726 (1967). No such motive exists in the determination of the government's priority under § 3466. *Ibid.*

It may very well be that "[t]he question of priorities is wholly or largely academic, unless the debtor is insolvent," *H. B. Agsten & Sons, Inc. v. Huntington Trust & Savings Bank, supra,* 388 F.2d at 161 (Haynsworth, C. J., concurring), but it does not follow from this that the FTLA is plainly inconsistent with § 3466. First, not all insolvencies are covered by § 3466:

"Mere inability of the debtor to pay all his debts in ordinary course of business is not insolvency within the meaning of the act, but it must be manifested in one of the modes pointed out in the latter part of the statute which defines or explains the meaning of insolvency referred to in the earlier part." *United States v. Oklahoma,* 261 U.S. 253, 260, 43 S.Ct. 295, 297, 67 L.Ed. 638 (1923).

Second, the question of priorities may arise even where the debtor is solvent. The government's need for tax liens extends to situations where there is a solvent debtor. For example, tax collections could be defeated by a transfer of a solvent taxpayer's assets before institution of enforcement proceedings were it not for the FTLA. *See* Kennedy, *supra,* at 919–920.

The Court is not unmindful of the many policy reasons why the government should not be entitled to priority under § 3466 when it is not entitled to priority under the FTLA.[12] However, persuasive these policy reasons may be, they do not convince the Court that the FTLA is plainly inconsistent with § 3466. Plaintiff's remedy, if there is to be a remedy, must come from Congress and not the courts.[13]

### B. Perfected and Specific Liens

■ Plaintiff's second argument is that her lien is excepted from the operation of § 3466 since it is a perfected and specific lien. While never yet holding that a perfected and specific lien is excepted from the operation of § 3466, the Supreme Court has on several occasions raised the issue only to avoid it by holding the asserted lien not sufficiently perfected and specific to qualify under any possible exception. *See, e. g., United States v. Gilbert Associates,* 345 U.S. 361, 366, 73 S.Ct. 701, 97 L.Ed. 1071

---

12. For a thorough discussion of these reasons, *see* Plumb, "The Federal Priority in Insolvency: Proposals for Reform," 70 Mich.L.Rev. 3 (1971).

13. Several respected commentators, while pointing out the inconsistencies between the FTLA and § 3466, have concluded that it will take congressional action to coordinate the two statutes. *See* Plumb, "Federal Liens and Priorities—Agenda for the Next Decade," 77 Yale L.J. 228, 243 (1967); Kennedy, "The Relative Priority of the Federal Government: The Pernicious Career of the Inchoate and General Lien," 63 Yale L.J. 904, 932 (1954); *see also H. B. Agsten & Sons, Inc. v. Huntington Trust & Savings Bank, supra,* 388 F.2d at 161 (Haynsworth, C. J., concurring).

(1953); *Illinois v. Campbell,* 329 U.S. 362, 370–371, 67 S.Ct. 340, 91 L.Ed. 348 (1946); *United States v. Waddill Co.,* 323 U.S. 353, 355–356, 65 S.Ct. 304, 89 L.Ed. 294 (1945); *United States v. Texas,* 314 U.S. 480, 485, 62 S.Ct. 350, 86 L.Ed. 356 (1941). In any event, the issue is not squarely before the Court since under federal law,[14] it is clear that a lien is sufficiently perfected and specific for purposes of § 3466 only if it has been reduced to possession. It is undisputed that plaintiff had not reduced her judgment lien to possession by writ of execution before the Capp Street property passed to Brann's estate.[15]

■ It has long been the rule that the federal government is entitled to priority under § 3466 over a judgment creditor who has only a general judgment lien upon all of the debtor's real property. *See Thelusson v. Smith,* 2 Wheat. 396, 15 U.S. 396, 4 L.Ed. 271 (1817). In *Thelusson,* the Supreme Court recognized that there must be some exceptions to the priority afforded the federal government under § 3466, and listed three such exceptions: bona fide conveyances, mortgages, and seizures under a *fi. fa.* The exceptions listed by the Court all involve situations in which "the property is divested out of the debtor and cannot be made liable to the United States." *Id.* at 426. Since a general judgment lien does not divest the debtor of his property, the Court held that such a lien is not excepted

from the operation of § 3466. *Id.* at 425–426.

The *Thelusson* opinion laid the foundation for the requirement that a lien be reduced to possession in order to be sufficiently perfected and specific for purposes of § 3466. This requirement has now been clearly delineated by the Supreme Court in several decisions. *See United States v. Gilbert Associates, supra,* 345 U.S. at 366, 73 S.Ct. 701 (municipal tax lien for unpaid ad valorem tax); *Illinois v. Campbell, supra,* 329 U.S. at 376, 67 S.Ct. 340 (statutory lien for state unemployment compensation taxes); *United States v. Waddill Co., supra,* 323 U.S. at 358, 65 S.Ct. 304 (statutory landlord's lien and municipal tax lien for unpaid personal property taxes). "In claims of this type, 'specificity' requires that the lien be attached to certain property by reducing it to possession, on the theory that the United States has no claim against property no longer in the possession of the debtor." *United States v. Gilbert Associates, supra,* 345 U.S. at 366, 73 S.Ct. at 704.[16]

Plaintiff correctly points out that *Thelusson* was the last Supreme Court decision dealing with judgment liens. From this, plaintiff argues that since recording acts did not exist at the time of the *Thelusson* opinion, the Supreme Court would reach a different result today in view of the present-day recording acts. Plaintiff ar-

---

**14.** "The effect and operation of a lien in relation to the claim of priority by the United States under Rev. Stat. § 3466 is always a federal question. 'The priority given the United States cannot be impaired or superseded by state law.'" *Illinois v. Campbell, supra,* 329 U.S. at 371, 67 S.Ct. at 345 (citation omitted); *see also United States v. Waddill Co., supra,* 323 U.S. at 356–357, 65 S.Ct. 304.

**15.** Section 3466 becomes operative upon the passing of the debtor's assets to a third party, here, the executor of Brann's estate.

**16.** Plaintiff argues that her lien is choate under the standards of *United States v. New Britain,* 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954), since "the identity of the lienor, the property subject to the lien, and the amount of the lien are established." 347 U.S. at 84, 74 S.Ct. at 369. Plaintiff's lien may very well be choate under the standards of *New Britain,* but it does

not necessarily follow that plaintiff's lien is perfected and specific for purposes of § 3466. The standards set forth in *New Britain* measured the choateness of liens competing with federal tax liens arising under 26 U.S.C. § 6321, and the same standards are not applicable when the government asserts a claim under § 3466. *United States v. Vermont,* 377 U.S. 351, 358, 84 S.Ct. 1267, 12 L.Ed.2d 370 (1964). For purposes of § 3466, a lien must not only meet the standards set forth in *New Britain* (*Illinois v. Campbell, supra,* 329 U.S. at 375, 67 S.Ct. 340), it must also be reduced to possession (*United States v. Gilbert Associates, supra,* 345 U.S. at 366, 73 S.Ct. 701). Both requirements must be met before a lien becomes perfected and specific for purposes of § 3466. *Cf. United States v. Vermont, supra,* 377 U.S. at 357–358, 84 S.Ct. 1267.

gues that in 1817 a judgment debtor could transfer his property free from any claims of a judgment creditor, whereas today, under § 674 of the California Code of Civil Procedure, a judgment debtor cannot transfer title to his property except subject to the claims of a creditor who has recorded his abstract of judgment.

Although plaintiff's historical analysis is correct, it does not follow that her judgment lien should be viewed as perfected and specific for purposes of § 3466. "The federal priority is not destroyed by state recording acts any more than by state statutes creating or otherwise affecting liens, if the lien as recorded or otherwise executed does not have the required degree of specificity and perfection. Under the decisions the test is not, and cannot be, simply whether by his taking further steps the lienor's rights will be enforced against others than the Government." *Illinois v. Campbell, supra,* 329 U.S. at 375, 67 S.Ct. at 347.

There is simply no reason to distinguish between a judgment lien and the liens which were before the Supreme Court in *United States v. Gilbert Associates, supra,* 345 U.S. at 366, 73 S.Ct. 701 (municipal tax lien for unpaid ad valorem tax); *Illinois v. Campbell, supra,* 329 U.S. at 376, 67 S.Ct. 340 (statutory lien for state unemployment compensation taxes); or *United States v. Waddill Co., supra,* 323 U.S. at 358, 65 S.Ct. 304 (statutory landlord's lien and municipal tax lien for unpaid personal property taxes). A judgment lien on all of a debtor's property is no more perfected and specific than a municipal tax lien on all of a debtor's property. *See United States v. Gilbert Associates, supra,* 345 U.S. at 366, 73 S.Ct. 701.

■ It is thus clear that a lien, including a judgment lien, will only be excepted from the operation of § 3466 if it has been reduced to possession, thereby divesting the judgment debtor of either title or possession. It is not disputed that plaintiff had not executed on her lien before the Capp Street property passed to Brann's estate, notwithstanding the fact that plaintiff had recorded an abstract of judgment. Under

California law, "[r]ecordation of an abstract of judgment merely creates a lien upon real property of the judgment debtor; such recordation is not an execution upon a judgment." *Industrial Indemnity Co. v. Levine,* 49 Cal.App.3d 698, 699, 122 Cal.Rptr. 712, 713 (1975) (citations omitted). Thus, even if perfected and specific liens are excepted from the operation of § 3466, which the Court need not decide, plaintiff's lien, not being sufficiently perfected and specific, does not qualify under such an exception.

## IV. ORDER

Accordingly, IT IS HEREBY ORDERED that plaintiff's motion for summary judgment is denied.

IT IS HEREBY FURTHER ORDERED that defendant United States' motion for summary judgment is granted, and judgment shall be entered in favor of defendant United States together with costs of suit incurred herein.

IT IS HEREBY FURTHER ORDERED that counsel for defendant United States shall prepare an appropriate form of judgment in accordance with this Memorandum of Opinion, obtain the approval of all other counsel as to form of judgment, and submit it to the Court for execution within ten (10) days of the date hereof.