## NLT COMPUTER SERVICES CORPORATION, Plaintiff,

### v.

CAPITAL COMPUTER SYSTEMS, INC., Manuel Eskind, Edward Eskind, Robert Eskind, Testa Distributing Company, Inc., Richard Distributing Company, Gallo Sales Company, Inc., Jerome S. Frankel, and United States of America, Defendants.

Civ. No. 82–3558.

United States District Court, M.D. Tennessee, Nashville Division.

Jan. 31, 1983.

Don L. Smith, Manier, White, Herod, Hollabaugh & Smith, Nashville, Tenn., for plaintiff.

Robert E. Rice, Tax Atty., Civ. Div., Dept. of Justice, Washington, D.C., Joe B. Brown, U.S. Atty., Gary Brown, Claude Ramer, James A. Davis, Jr., Thomas B. Cresswell, Jr., Barrett B. Sutton, Jr., David N. Shearon, Harlan Dodson, III, Nashville, Tenn., for defendants.

## MEMORANDUM

MORTON, Chief Judge.

This interpleader action came before the Court on January 10, 1983, for oral argument on the motion of the United States for summary judgment. It has been stipulated by the parties that there are only four claimants to the $150,000 which has been paid into the registry of the Court: Gallo Sales Co., Inc.; Testa Distributing Co., Inc.; Richard Distributing Co.;[1] and the United States. The action was brought by NLT Computer Services to determine the rights of the claimants to payments which it had intended to make to Capital Computer Systems, Inc., (Capital) pursuant to a certain contract dated December 28, 1981. The claim of the United States to those payments is based on unpaid withholding tax liabilities of Capital which are stipulated to be "in excess of $500,000"; the other three claimants are judgment creditors of Capital.

In its motion for summary judgment the United States relies on the priority afforded to it by the provisions of 31 U.S.C. Sec. 3713(a).[2] That statute provides, in relevant part:

> Whenever any person indebted to the United States is insolvent, * * * the debts due to the United States shall be first satisfied; and the priority hereby established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed. The priority established under this section does not apply, however, in a case under title 11.

Before proceeding to a substantive discussion of the effect of Section 3713(a) in this action, a preliminary matter must be first addressed. At the January 10, 1983 hearing, counsel for Testa and Richard announced that they had, that morning, filed an involuntary petition in bankruptcy against Capital. Two questions are thereby presented: first, whether this Court is stayed from proceeding in this matter by 11 U.S.C. Sec. 362 (the "automatic stay"); secondly, whether the filing removes this case from the effect of Section 3713(a) because of the last sentence of that statute.

■ The Court concludes that, for several reasons, the automatic stay does not prevent continuation of this action. First, it appears that the automatic stay is not applicable by the express terms of 11 U.S.C. Sec. 362. The several subsections of Section 362(a) stay acts and judicial proceedings "against" the debtor and/or property of the estate. This interpleader action is certainly not one "against" the debtor, especially where the debtor has specifically disclaimed any interest in the funds. In addition, the funds in question are not property of the estate because the debtor claims

1. Hereinafter respectively referred to as Gallo, Testa, and Richard.

2. This statute has recently been recodified by P.L. No. 97–258, 96 Stat. 877 (effective September 13, 1982). It was formerly known as 31 U.S.C. Sec. 191 and was also often referred to as Section 3466 of the Revised Statutes.

no interest in them and because Capital's right to payment, which gave rise to the funds, had been previously levied upon by the United States. See *Cross Electric v. United States,* 664 F.2d 1218 (4th Cir.1981).[3]

An important consideration in this matter is this Circuit's adoption of a model rule to deal with bankruptcy matters in light of the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), which held the jurisdictional grant contained in the Bankruptcy Code unconstitutional. In essence, the rule provides that although the District Court has jurisdiction over bankruptcy cases, all bankruptcy cases are referred to the bankruptcy court for disposition, with certain limitations on the powers of the bankruptcy judges. One of these limitations is that a bankruptcy judge may not conduct a proceeding to enjoin a court. Rule (d)(1). Moreover, the rule gives this Court the power to withdraw the reference at any time upon its own motion. Therefore, this Court, at the hearing, withdrew the reference to bankruptcy court regarding the involuntary petition filed against the debtor; lifted the automatic stay (if it applies at all) as it pertains to this interpleader action; and remanded the bankruptcy case to the bankruptcy court for any further proceedings in that matter.

■ The second question is whether the filing of the bankruptcy petition removes this case from the effect of Section 3713(a), as contended by Testa and Richard. The last sentence of the statute provides: "the priority established under this section does not apply, however, in a case under title 11."

But this interpleader action is not one "under title 11." The complaint herein was filed on June 22, 1982, and is in no way

related to the bankruptcy petition filed on January 10, 1983, under Title 11.

The Court is unaware of, and neither Testa nor Richard have cited, any statutory provision or other authority which would somehow convert the instant interpleader action into one "under Title 11" simply because an involuntary bankruptcy petition has been filed against a party to this proceeding. The Court therefore finds that the filing of the petition does not stay this action.

The Court now turns to the effect of Section 3713(a) as it relates to the priority of the competing claimants to the fund. The Supreme Court has often stated that the statute is to be liberally construed to effect the public purpose of securing debts owed to the United States. *Bramwell v. United States Fidelity & Guaranty Co.,* 269 U.S. 483, 46 S.Ct. 176, 70 L.Ed. 368 (1926); *United States v. Whitney,* 654 F.2d 607 (9th Cir.1981). The purpose and primacy of the statute are revealed in the following statement:

> * * * And it is manifest, that Congress intended to give priority of payment to the United States over all other creditors, in the cases cited therein. It, therefore, lies upon those who claim exemption from the operation of the statute, to show that they are not within its provisions.

*Beaston v. Farmer's Bank,* 37 U.S. (12 Pet.) 102, 134, 9 L.Ed. 1017 (1838), quoted in *Bramwell, supra,* and *Whitney, supra.*

Thus, the United States is entitled to the funds on deposit with this Court if the debtor, Capital, is "insolvent" within the meaning of the statute. It is stipulated that Capital is and has been "insolvent." An involuntary petition in bankruptcy has been filed against it. The debtor has allowed judgments against him to stand unsatisfied for more than 30 days.[4] *Ideco v.*

---

**3.** Section 362(a)(6) stays "any act to collect * * a claim against the debtor which arose before the commencement of the case under this title." But the legislative history makes clear that this was intended to prevent creditors from harassing debtors after a petition is filed. House Report No. 95–595, 95th Cong., 1st Sess. 340–2 (1977); Senate Report No. 95–989, 95th

Cong., 2d Sess. 49–51 (1978), U.S.Code Cong. & Admin.News, p. 5787.

**4.** Here, it is stipulated that judgments against Capital were obtained on October 1, 1979 (in New Mexico) and June 30, 1981 (in Louisiana). It is further stipulated that neither judgment has ever been satisfied. Thus, Capital was

*Chance Drilling Co.,* 422 F.2d 165 (5th Cir. 1963); *United States v. Dyna-Tex, Inc.,* 372 F.Supp. 278 (E.D.Tenn.1972); *United States v. Williams,* 139 F.Supp. 94, 97–98 (M.D. N.C.1956). The statute is therefore applicable to the instant case. *Ibid.*

The other claimants to the fund assert, however, that because their interests would be superior to the tax lien of the United States pursuant to 26 U.S.C. Sec. 6323 (and the doctrine of "choateness"), their claims are also superior where the United States asserts priority under Section 3713(a). That is, they argue that Section 6323 is an implied exception to Section 3713(a). In the alternative, they argue that even if Section 6323 is not an exception to Section 3713(a), their claims are "perfected and specific" so as to prime the claim of the United States.

It has long been recognized by the Supreme Court and lesser courts that the test for superiority over a claim of the United States differs depending on whether the United States makes its claim pursuant to a tax lien on the one hand or the "insolvency statute", as Section 3713(a) is often called, on the other. *United States v. Vermont,* 377 U.S. 351, 357, 84 S.Ct. 1267, 1270, 12 L.Ed.2d 370 (1964); *United States v. Gilbert Associates,* 345 U.S. 361 at 366, 73 S.Ct. 701 at 704, 97 L.Ed. 1071 (1952); *Commonwealth of Kentucky v. United States,* 383 F.2d 13 at 15 (6th Cir.1967); *Spira v. United States,* 76–2 U.S.T.C. para. 9600 (N.D.Ill. 1976); *Nesbitt v. United States,* 445 F.Supp. 824, 830–831 (N.D.Cal.1978); *United States v. Davis,* 247 F.Supp. 84, 88 (E.D.Mich.1965); *Durham v. United States,* 82–2 U.S.T.C. para. 85,043 at 85,045 (D.N.J. 1982). Although a lienholder may defeat a federal tax lien when his claim was "choate" prior to the filing of the notice of tax lien (or is listed as an exception to federal priority in Section 6323), this is not enough to defeat a claim of the United States where Section 3713(a) is applicable. *Ibid.* Indeed, the Supreme Court has studiously avoided deciding whether any interest

can prime a United States claim in a Section 3713(a) case. *Gilbert, supra,* 345 U.S. at 365, 73 S.Ct. at 704; *Commonwealth of Kentucky, supra* at 15; *Nesbitt, supra* at 830. It has avoided this question by consistently finding that the competing lien was not sufficiently "perfected and specific" to possibly qualify as an exception to Section 3713(a). *Ibid.* This is because, to be "perfected and specific" in the Section 3713(a) context, a competing lien must be reduced to actual possession:

> In claims of this type, "specificity" requires that the lien be attached to certain property by reducing it to possession, on the theory that the United States has no claim against property no longer in possession of the debtor. [citation omitted] * * * [Here] the taxpayer had not been divested by the Town of either title or possession. The Town, therefore, had only a general, imperfected lien.

*United States v. Gilbert Associates, supra,* 345 U.S. at 366, 73 S.Ct. at 704; quoted in *United States v. Vermont, supra,* and *Commonwealth of Kentucky, supra.*

This standard has been interpreted by the Sixth Circuit in a fact situation very similar to the one at bar in *Commonwealth of Kentucky v. United States,* 383 F.2d 13 (6th Cir.1967). There, the State of Kentucky had obtained a judgment against a debtor before the United States had recorded certain notices of tax lien against him.[5] A writ of execution which issued upon the judgment was unsuccessful. The State was, therefore, in the same situation as the other claimants here and it made the same argument they do: that Section 6323 is an implied exception to Section 3713(a). The Sixth Circuit noted that the statute on its face permits no exception; that the Supreme Court had never passed on the question of whether even a "specific and perfected" lien could defeat Section 3713(a) priority; and that "specificity" in this context requires possession. It then held that since the property in dispute had not been reduced to possession by the State, the

---

insolvent within the meaning of the statute as of October 31, 1979, and continues to be so.

5. The state conceded the priority of the United States as to amounts secured by other notices of tax lien filed before the state obtained its judgment.

United States was entitled to the property. The decision of the 6th Circuit is bolstered by the language of the Supreme Court of the United States in *U.S. v. Britain,* 347 U.S. 81, 85, 74 S.Ct. 367, 370, 98 L.Ed. 520 as follows:

> When the debtor is insolvent, Congress has expressly given priority to the payment of indebtedness owing the United States, whether secured by liens or otherwise, by § 3466 of the Revised Statutes, 31 U.S.C. (1946 ed.) § 191. In that circumstance, where all the property of the debtor is involved, Congress has protected the federal revenues by imposing an absolute priority. Where the debtor is not insolvent, Congress has failed to expressly provide for federal priority, with certain exceptions not relevant here, although the United States is free to pursue the whole of the debtor's property wherever situated. The State, having a lien only upon property within its boundaries, may not reach beyond the state line to fasten its lien upon other property. The record does not establish that the taxpayer in this case was insolvent.

■ The remaining question is whether the claims of Gallo, Testa, and Richard have been reduced to possession so that they may be considered "specific and perfected" and therefore present the question which the Supreme Court has so far avoided: whether any interest may prime the federal government's Section 3713(a) claim.

The claims of Testa and Richard are both based on foreign judgments and subsequent writs of garnishment which have issued in Tennessee. The writs issued prior to the due date of the payments in question. It appears, however, that the writs did not attach to the payments in issue because the obligation to pay was contingent on a future event, see *Overman v. Overman,* 570 S.W.2d 857 (Tenn.1978); and even if they did attach, they provided Testa and Richard with only a lien—not possession—on the contract right to be paid, Tenn.Code Sec. 26–2–213.

---

**6.** Indeed, Testa apparently claims only a lien on Capital's rights to be paid. Stipulation, para-

Here, as in *Overman,* the right to be paid was contingent. Article II of the agreement giving rise to the payments contains the following language:

> Anything in this Article II and/or in this Agreement to the contrary notwithstanding, it is agreed that no monies whatsoever shall be due from Buyer to Seller unless and until seller has satisfied in full all of its obligations under this Agreement.

Aside from various warranties and promises regarding the goods sold under the agreement, Capital promised to "cooperate and assist" NLT in hiring certain persons. Capital also entered a covenant not to compete with NLT (Article V). Thus, if Capital had competed with or assisted others in competing with NLT, no payments would ever have been owed to it. This situation is analogous to the one presented in *Overman,* where the Tennessee Supreme Court said:

> In addition, the respondents have an existing obligation to Mr. Overman under the contracts—specifically, the obligation to make payments to him according to the terms of the annuities should he live until their dates of maturity. However, this obligation, whether it is characterized as a debt or as a chose in action, is not subject to garnishment because it is contingent on a future event—Mr. Overman's survival until the dates of maturity. If he should die before the contracts mature, the respondents will never be indebted to Mr. Overman in any amount. While obligations that are certain, although not presently due, are subject to garnishment, obligations that are contingent, in that they may never become due, are not.

See also, *Hamilton National Bank v. Long, et al.,* 189 Tenn. 562, 226 S.W.2d 293 (1949).

Thus, the payments in issue here were not subject to garnishment. But, if they were, the garnishment provided Testa and Richard with a mere lien upon the debts in accordance with the express language of Tenn.Code Sec. 26–2–213.[6] This, of course,

---

graph 5(b)(3).

is a far cry from possession, which would be necessary for Testa or Richard to argue that their interests are "specific and perfected." [7] The Court therefore holds that the claims of Testa and Richard are inferior to the Section 3713(a) claim of the United States.

■ The remaining claimant to the funds is Gallo Sales Company. Its claim is based on a security interest it obtained in the payments which are now on deposit with the Court. The Agreement for Limited Security was executed on December 31, 1981, and gave Gallo a security interest on the proceeds to secure payment of "any sums due to Gallo pursuant to a money judgment, if any, entered in favor of Gallo * * *." Obviously, the amount of Gallo's lien was not fixed by this agreement, and its claim could not be considered "choate"—much less "specific and perfected"—until, at best, the date of the judgment: December 10, 1982. This was many months after the notice of federal tax lien was filed. Most importantly, however, a perfected security interest does not give a holder thereof title to, or possession of, the collateral. Gallo had, at best, a lien on Capital's rights to payment. This is simply not enough to defeat the Government's Section 3713(a) claim.[8] The Court therefore holds that Gallo's claim is inferior to the claim of the United States.

In summary, the Court holds that 31 U.S.C. Sec. 3713(a) is applicable to the instant action and that it affords priority to the claim of the United States to the funds on deposit with this Court. An appropriate order will be entered.

7. See text, *supra,* at p. 963. Needless to say, these writs did not reduce the funds to the actual possession of Testa or Richard, as the funds in question have been deposited with the Clerk of Court.

8. See text, *supra,* p. 963. Gallo makes the argument that the Supreme Court has "moved away" from the absolute priority afforded the United States by Section 3713(a) in *United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979). This is simply not so: that section was not in issue in that case. Moreover, in *Kimbell,* the Government's claim arose from an SBA loan. The Court stated that it agreed with the Fifth Circuit that

"as a quasi-commercial lender, the Government does not require * * * the special priority which it compels as sovereign in its tax collecting capacity." 440 U.S. at 737–738, 99 S.Ct. at 1463. The case at bar is wholly different from *Kimbell,* and the rationale of that case is inapposite here. Further, Gallo's arguments that Section 3713(a) should not be construed in a way which would thwart the legitimate expectations of businessmen are not well founded, given the facts of this case: Gallo did not enter into its contract with Capital in reliance on the security agreement. The security agreement was procured much later, at the commencement of the litigation over that contract.